## CASE NO. 3:22-cv-02051-B

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

HIGHLAND CAPITAL MANAGEMENT LP

(Debtor)

CLO HOLDCO LTD

(Appellant)

v.

MARC KIRSCHNER

*the Litigation Trustee for the Highland Litigation SubTrust*

(Appellee)

On appeal from the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

## <u>ORIGINAL APPELLANT BRIEF</u>
## <u>FILED ON BEHALF OF CLO HOLDCO LTD</u>

Filed by **KELLY HART PITRE**
Louis M. Phillips (#10505)
One American Place
301 Main Street, Suite 1600
Baton Rouge, LA 70801-1916
Telephone: (225) 381-9643
Facsimile: (225) 336-9763
Email: louis.phillips@kellyhart.com
Amelia L. Hurt (LA #36817, TX #24092553)
400 Poydras Street, Suite 1812

New Orleans, LA 70130
Telephone: (504) 522-1812
Facsimile: (504) 522-1813
Email: amelia.hurt@kellyhart.com

**KELLY HART & HALLMAN**
Hugh G. Connor II
State Bar No. 00787272
hugh.connor@kellyhart.com
Michael D. Anderson
State Bar No. 24031699
michael.anderson@kellyhart.com
Katherine T. Hopkins
Texas Bar No. 24070737
katherine.hopkins@kellyhart.com
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 332-2500
Telecopier: (817) 878-9280

# I.   CORPORATE DISCLOSURE STATEMENT

Pursuant to FED. R. BANKR. P. 8012, Appellant CLO HoldCo, Ltd. ("CLO HoldCo") states that no publicly held corporation owns 10% or more of its stock, and its parent corporation is the Charitable DAF Fund, L.P., a Cayman entity.

## II.   TABLE OF CONTENTS

**Page(s)**

I.   CORPORATE DISCLOSURE STATEMENT .................................................i

II.   TABLE OF CONTENTS ........................................................................ ii

III.   TABLE OF AUTHORITIES ...........................................................................iv

IV.   JURISDICTIONAL STATEMENT ...............................................................1

V.       STATEMENT OF ISSUES PRESENTED AND APPLICABLE
STANDARD OF REVIEW ....................................................................2

VI.   STATEMENT OF THE CASE ......................................................................4

   A.   Highland Crusader Fund Management and the Plan and Scheme ...............4

   B.   The CLO HoldCo Participation and Tracking Interests ...............................6

   C.   The Arbitration Awards ..................................................................8

   D.   The Highland Bankruptcy and Proofs of Claim.........................................9

   E.   The HarbourVest Settlement and First Amended CLO HoldCo Claim ......10

   F.   The Effective Date and Adversary Proceedings ..........................................13

   G.   The Second Amended Proof of Claim ........................................................15

   H.   The Bankruptcy Court's Ruling .................................................................17

VII.   SUMMARY OF ARGUMENT ....................................................................18

VIII.   ARGUMENT ...........................................................................................20

   A.   The *Kolstad* test applies here, and under that test, the Second Amended
Proof of Claim should have permitted. .........................................................21

     1.   *Kolstad* applies post-confirmation. ......................................................21

     2.   Here, confirmation of the Plan is of no particular significance, and there is
no prejudice to the estate...................................................................24

3.      The Second Amended Proof of Claim merely asserts a new legal theory based on the facts set forth in the original claim. ...............................................27

B.     CLO HoldCo did not waive its rights to amend its First Amended Proof of Claim, nor should it be estopped from doing so. ..............................................28

1.      CLO HoldCo consistently reserved the right to amend its proof of claim, and the First Amended Proof of Claim did not result in waiver or estoppel....29

2.      A comment in a separate adversary proceeding related to a motion to stay is not a knowing waiver or advertent inconsistent position...............................30

C.     The Second Amended Proof of Claim sets forth a viable claim against Highland. ..................................................................................................................32

IX.    CONCLUSION AND RELIEF SOUGHT ....................................................36

X.     CERTIFICATE OF COMPLIANCE ...............................................................37

# III.   TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. S&B Eng'rs & Constructors LLC*,
   No. 1:13-CV-384, 2014 WL 12906440 (E.D. Tex. Sept. 22, 2014) ...............25

*Matter of Alliance Operating Corp.*,
   60 F.3d 1174 (5th Cir. 1995) ...................................................................21

*Anderson v. FDIC*,
   918 F.2d 1139 (4th Cir. 1990) .................................................................13

*Anderson v. Wells Fargo Bank, N.A.*,
   953 F.3d 311 (5th Cir. 2020) ...................................................................13

*In re Base Holdings, LLC*,
   No. 09-34269-SGJ-7, 2014 WL 895403 (N.D. Tex. Mar. 5, 2014)..................13

*In re Ben Franklin Hotel Associates*,
   186 F.3d 301 (3d Cir. 1999).   ..................................................................22

*Bunner v. Dearborn Nat'l Life Ins. Co.*,
   37 F.4th 267 (5th Cir. 2022) ....................................................................29

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) .................................34

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
   632 F.3d 148 (5th Cir. 2010) ..........................................................4, 5, 7, 8

*In re Coastal Plains*,
   179 F.3d 197 (5th Cir.1999) .......................................................................2

*Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*,
   972 F.3d 684 (5th Cir. 2020) ...................................................................13

*Crossland v. Canteen Corp.*,
   711 F.2d 714 (5th Cir. 1983) ...................................................................25

iv

*In re Dortch*,
    No. 07-45041-DML-13, 2009 WL 6764538 (Bankr. N.D. Tex.
    Dec. 1, 2009)...................................................................................21, 22

*In re Entergy New Orleans, Inc.*,
    No. 05-17697, 2008 WL 2789313 (Bankr. E.D. La. July 17, 2008)............18, 20

*In re Flugence*,
    738 F.3d 126 (5th Cir. 2013) ...............................................................29

*Funk v. Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) ...............................................................13

*In re Goodman*,
    261 B.R. 415 (Bankr. N.D. Tex. 2001)....................................................23

*Holstein v. Brill*,
    987 F.2d 1268 (7th Cir. 1993) ...............................................................24

*In re Imperial Petroleum Recovery Corp.*,
    No. 13-30466, 2022 WL 90607 (Bankr. S.D. Tex. Jan. 7, 2022).......................14

*In re Jazz Casino Co., L.L.C.*,
    No. 03-3018, 2004 WL 2095616 (E.D. La. Sept. 7, 2004), *aff'd sub
    nom. In re Jazz Casino Co. LLC*, 134 F. App'x 749 (5th Cir. 2005).................27

*Kane v. Nat'l Union Fire Ins. Co.*,
    535 F.3d 380 (5th Cir. 2008) ...........................................................3, 4

*In re Knowles*,
    No. 396-35673-RCM-13, 1999 WL 718654 (N.D. Tex. Sept. 14,
    1999) ......................................................................................23

*In re Kolstad*,
    928 F.2d 171 (5th Cir. 1991), *cert. denied* 502 U.S. 958, 112 S. Ct.
    419, 116 L. Ed. 2d 439 (1991).  ................................................*passim*

*Lovelace v. Software Spectrum, Inc.*,
    78 F.3d 1015 (5th Cir. 1996) ...............................................................14

*In re Mason*,
    520 B.R. 508, 517 (Bankr. S.D. Miss. 2014)....................................................25

*Morales v. Garland*,
27 F.4th 370 (5th Cir. 2022) ............................................................2, 3

*N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ................................................................33

*In re Perry*,
411 B.R. 368 (Bankr. S.D. Tex. 2009) ................................................27

*In re Pilgrim's Pride Corp.*,
442 B.R. 522 (Bankr. N.D. Tex. 2010)................................................27

*Rainbow Energy Mktg. Corp. v. DCT, LLC*,
No. 1:21-CV-313-RP, 2022 WL 2188144 (W.D. Tex. June 17,
2022) ......................................................................................................33

*In re Royce Homes LP*,
466 B.R. 81 (S.D. Tex. 2012) ...............................................................13

*Stripling v. Jordan Prod. Co.*,
LLC, 234 F.3d 863 (5th Cir. 2000)......................................................33

*U.S. v. Johnston*,
267 B.R. 717 (N.D. Tex. 2001), *aff'd sub nom. In re Johnston*, 48
F. App'x 917 (5th Cir. 2002) ......................................................*passim*

*In re Vega*,
No. 15-34014, 2017 WL 2954762 (Bankr. S.D. Tex. July 10, 2017) ...............27

*Matter of Waindel*,
65 F.3d 1307 (5th Cir. 1995) ...................................................20, 27

*In re Walker*,
526 B.R. 187 (E.D. La. 2015)...............................................18, 20, 36

*In re Winn-Dixie Stores, Inc.*,
639 F.3d 1053 (11th Cir. 2011) .........................................21, 22, 24

## Statutes

28 U.S.C. §157(a) .......................................................................1

28 U.S.C. §157(b)(2)(B) ............................................................1

28 U.S.C. § 158(a) ...................................................................................1

28 U.S.C. § 1134(b) .................................................................................1

**Other Authorities**

FED. R. BANKR. P. 8015 ........................................................................37

FED. R. BANKR. P. 9019 ........................................................................35

FED. R. CIV. P. 12(b)(6) .........................................................................33

FED. R. CIV. P. 15 ............................................................................16, 25

## IV.   JURISDICTIONAL STATEMENT

The United States District Court for the Northern District of Texas had original jurisdiction over the underlying bankruptcy case and the contested matter brought by the *Motion to Ratify Second Amended Proof of Claim and Expunging Claim* (the "Motion to Ratify") pursuant 28 U.S.C. § 1134(b), and the Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") had authority to issue a final judgment determining the Motion to Ratify pursuant 28 U.S.C. §157(a) upon the *Miscellaneous Order No. 33, Order of Reference of Bankruptcy Cases and Proceedings nunc pro tunc to the Bankruptcy Judges of This District,* and 28 U.S.C. §157(b)(2)(B), because the Motion to Ratify involved the allowance of claims against the estate of the captioned debtor.  The District Court has jurisdiction over this matter under 28 U.S.C. § 158(a) because this is an appeal from a final order of the Bankruptcy Court, the *Order Denying Motion to Ratify Second Amended Proof of Claim and Expunging Claim* entered in Bankruptcy Case No. 19-34054 at Dkt. No. 3457 ("Order Denying Motion to Ratify").  The Order Denying Motion to Ratify was docketed on August 17, 2022 and CLO HoldCo filed its *Notice of Appeal* timely on August 31, 2022.  ROA.000006, ROA.000003.

1

## V.   STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD OF REVIEW

1. Whether the Bankruptcy Court erred as a matter of law by denying CLO HoldCo's *Motion to Ratify Second Amendment to Proof of Claim [Claim No. 198] and Response to Objection to Claim* (the "Motion to Ratify")?

**Standard of Review**:   Decisions that are within the bankruptcy court's discretion or decisions based upon equitable grounds are reviewed for abuse of discretion. *See In re Coastal Plains*, 179 F.3d 197, 205 (5th Cir.1999). However, "'[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" *Coastal Plain*s, 179 F.3d at 205 (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996)).  As set forth herein, the Bankruptcy Court applied an incorrect legal standard to the Motion to Ratify and thus, its decision was guided by an erroneous legal conclusion.

2. Whether the Bankruptcy Court applied the correct legal standard to the Motion to Ratify?

**Standard of Review**: Whether the correct legal standard has been applied is a question of law which the reviewing court reviews de novo. *Morales v. Garland*, 27 F.4th 370, 371–72 (5th Cir. 2022).  Here, where the Bankruptcy Court failed to apply binding Fifth Circuit law, and instead applied a heightened and different

2

standard governing propriety of amendments of claims in bankruptcy cases and hence to determine the Motion to Ratify, it applied an incorrect legal standard.

3. Whether the Bankruptcy Court erred as a matter of law in finding that post-confirmation, compelling circumstances must be shown to permit amendments to proofs of claim?

**Standard of Review**: Whether the correct legal standard has been applied is a question of law that the reviewing court reviews de novo. *Morales v. Garland*, 27 F.4th 370, 371–72 (5th Cir. 2022).  Again, because the heightened standard applied by the Bankruptcy Court conflicts with binding Fifth Circuit law, applying it here was an error of law.

4. Whether the Bankruptcy Court erred in concluding that CLO HoldCo came close to either waiver or estoppel regarding its right Claim No. 198 (*see* Page 65:17-22 in the Transcript of the August 4, 2022 Ruling),[1] such that the Court could use discretion in denying the Motion to Ratify?

**Standard of Review**: Because waiver and judicial estoppel are equitable doctrines and the decision whether to invoke equitable doctrines is within the court's discretion, the standard of review is for abuse of discretion.  *Kane v. Nat'l Union*

---

[1] The Bankruptcy Court stated that: "CLO Holdco has stepped at least almost in the lane of waiver and estoppel, if not entirely into the lane. That is another fact weighing heavy on the Court's mind in exercising its discretion. It feels darn close to waiver and estoppel, if not exactly precisely there." ROA.00076, 65:16-25.

3

*Fire Ins. Co*., 535 F.3d 380, 384 (5th Cir. 2008). "However, an abuse of discretion standard does not mean a mistake of law is beyond appellate correction, because a district court by definition abuses its discretion when it makes an error of law. Accordingly, the abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions" *Id*.

5. Whether the Bankruptcy Court erred in finding that the amended claim set forth as Claim No. 254 (the "Second Amended Proof of Claim") was frivolous and that the Motion to Ratify should therefore be denied?

**Standard of Review**: Where a court denies an amendment to a pleading on the basis of futility, courts apply a de novo standard of review. *City of Clinton, Ark. v. Pilgrim's Pride Corp*., 632 F.3d 148, 152 (5th Cir. 2010). Here, a plain reading of the attached documents demonstrate that the Second Amended Proof of Claim, at an absolutely minimum, sets forth a viable claim that once liquidated in amount, should be allowed.

## VI.   STATEMENT OF THE CASE

### A. Highland Crusader Fund Management and the Plan and Scheme

Highland Capital Management, L.P. ("Highland") served as investment manager for the Highland Crusader Funds (the "Crusader Funds"), which were formed between 2000 and 2002 and consist of the Highland Crusader Fund, L.P. (the "Onshore Crusader Fund") and Highland Crusader Fund II, Ltd. (the "Offshore

Crusader Fund"). ROA.002462. The capital raised through the Onshore Crusader Fund and Offshore Crusader Fund was pooled into a master fund. ROA.002463. During the 2008 market decline, Highland was flooded with redemption requests from Crusader Funds investors, and on October 15, 2008, Highland placed the Crusader Funds in wind-down, compulsorily redeeming Crusader Funds' limited partnership interests. ROA.002463.

In 2011, following litigation commenced by an investor in the Crusader Funds, the Supreme Court of Bermuda approved the adoption of the negotiated "Plan and Scheme."[2] ROA.002463. The Plan and Scheme's purpose was to "enable the orderly management, sale, and distributions of the assets by [Highland]" and preserve the rights of those investors who had voluntarily redeemed their interests but had not yet been paid their redemption amount and those who were compulsorily redeemed (together, the "Redeemers") to oversee the process. *Id*. (quoting the Partial Final Arbitration Award, at II.B.1). Pursuant to the Plan and Scheme, the ten-person committee of Redeemers (the "Redeemer Committee") had significant oversight and influence over the wind-down of the Crusader Funds, but Highland continued to serve as investment manager, liquidating assets and distributing proceeds. ROA.002463.

---

[2]     The Scheme incorporates the Plan, which contains effectively identical provisions. *See* ROA.002462 at n.1.

## B. The CLO HoldCo Participation and Tracking Interests

Since January 1, 2012, Charitable DAF GP, LLC ("DAF GP") and Highland were parties to an investment advisory agreement under which Highland provided investment advisory services to DAF GP and Charitable DAF Fund, LP (the "DAF") and its subsidiaries.   ROA.002358.   CLO HoldCo is a subsidiary of DAF. ROA.002380-83.  Highland continued to serve as investment advisor to the DAF and CLO HoldCo until the advisory agreement was terminated by Highland effective January 2021.  ROA.002387.

While serving as investment advisor to the DAF and CLO HoldCo, Hihghland created certain participation interests (the "Participation Interests") in certain participating shares of the Onshore Crusader Fund and the Offshore Crusader Fund that had been purchased by Highland (the "Highland Crusader Interests") and a tracking interest (the "Tracking Interests," together, the "Participation and Tracking Interests") in certain participating shares of the HCLMP Crusader Interests.  The Participation and Tracking Interests were interests that constituted the economic value of the Highland Crusader Interests.  The Participation and Tracking Interests were transferred from Highland and then to Highland Dallas Foundation. Thereafter, the Participation and Tracking Interests were transferred through a series of customary transfers through the charitable enterprise entity structure (Highland Dallas Foundation to DAF GP, to DAF to CLO HoldCo), such that ultimately the

interests were transferred to CLO HoldCo by *Written Resolution effective December 28, 2016*.  ROA.002176-77.  In creating and granting the Participation and Tracking Interests, Highland agreed that:

> Subject to any applicable tax withholding, Highland shall promptly pay to the holder of the Participation Interest an amount equal to such holder's share of each amount received and applied by Highland … in payment of distributions, Plan Claims (as defined in the Joint Plan of Distribution of the Crusader Funds adopted by Highland Crusader Offshore Partners, L.P., the Onshore Crusader Fund, Highland Crusader Fund, Ltd. and the Offshore Crusader Fund, and the Scheme of Arrangement between the Offshore Crusader Fund and its Scheme Creditors, as applicable) and **proceeds of any sale, assignment or other disposition of any interest, in each case, with respect to or in the Participating Shares** (such holder's share of such amounts, collectively, the "Participation Proceeds"). Pending such payment of Participation Proceeds by Highland to the holder of the Participation Interest, Highland will hold the Participation Proceeds in trust for the benefit of such holder and will not commingle such amounts with other property of Highland. Subject to any applicable tax withholding, Highland shall promptly pay to the holder of the Tracking Interest an amount equal to each amount received and applied by Highland in payment of distributions, Plan Claims **and proceeds of any sale, assignment or other disposition of any interest, in each case, with respect to or in the Underlying Share**s.  Notwithstanding anything herein to the contrary, except for the right to receive amounts specified in this paragraph, no holder shall have, by reason of the Participation Interest or the Tracking Interest, any rights with respect to the Participating Shares or the Tracking Shares.

*Id*. (emphasis added).  As such, Highland was obligated to pay to CLO HoldCo (as holder of the Participation and Tracking Interests) the proceeds of any sale,

assignment, or other disposition of any interest with respect to or in the Highland Crusader Interests.

### C. The Arbitration Awards

Disputes arose between Highland and the Redeemer Committee culminating in the termination of Highland as investment manager by letter dated July 5, 2016. ROA.002465.  That same day, the Redeemer Committee filed a Notice of Claim before the American Arbitration Association (the "Panel") commencing the arbitration proceeding bearing case no. 01-016-0002-6927 (the "Arbitration").  *Id.* Important to this appeal, in the Arbitration, the Redeemer Committee asserted that Highland breached its fiduciary duty and the Plan and Scheme by purchasing certain interests in the Crusader Funds for itself, *i.e.* the Highland Crusader Interests, in violation of the Redeemer Committee's right of first refusal.  ROA.002469.  For this, the Redeemer Committee sought damages equivalent to the value of the Highland Crusader Interests at the time they were sold, plus any profits or benefits realized by Highland and pre-judgment interests.  ROA.002485.

On March 6, 2019, the Panel issued that certain *Partial Final Award* (the "Partial Final Award") determining that Highland breached its fiduciary duty and the Plan and Scheme by taking the Highland Crusader Interests.  ROA.002491.  In calculating damages for Highland's breach, the Panel adopted the following methodology: (i) Highland was to transfer the Highland Crusader Interests to the

8

Redeemer Committee, (ii) "pay [the Redeemer Committee] whatever financial benefits [Highland] received from [the acquisition of the Highland Crusader Interests], **less what [Highland] paid for the [Highland Crusader Interests]**, plus interest..."  ROA.002492 (quoting the Partial Final Award, at ¶III.H.25) (emphasis added).  The Panel left the hearing open for the parties to work out the exact financial details to comply with its order.  *Id*.

On April 29, 2019, the Panel issued that certain final award (the "Final Award"), which included the final disposition of the damages that was left open in the Partial Final Award.  ROA.002548.  The Panel ordered that the Highland Crusader Interests be transferred to the Redeemer Committee or that the Redeemer Committee cause the Crusader Funds to extinguish the Highland Crusader Interests; and that Highland pay $3,106,414, plus interest.  ROA.002548-49 (quoting Final Award, ¶F.v.).

### D. The Highland Bankruptcy and Proofs of Claim

On October 6, 2019, a hearing before the Chancery Court of Delaware was set regarding the Final Award, and that same day, Highland filed a petition for relief under chapter 11 of the Bankruptcy Code commencing its bankruptcy case (the "Highland Bankruptcy") and halting the Delaware proceeding.  ROA.000326; ROA.003368, 003371.  The Bankruptcy Court entered that certain *Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner*

*of Notice Thereof* (the "Bar Date Order"), which established a general bar date of April 8, 2020.  ROA,002723.

On April 3, 2020, the Redeemer Committee filed a general unsecured claim in the amount of $190,824,557.00, plus "post-petition interest, attorneys' fees, costs and other expenses that [allegedly] continue[d] to accrue."  ROA.000921-30.  The Redeemer Committee's claim is based upon the Final Award, expressly including a claim for the cancellation of the Highland Crusader Interests in addition to an award of $3,277,991.00 for the "taking of [the Highland Crusader Interests]."  *Id*.  The Crusader Funds themselves also filed a general unsecured claim based on the Final Award in the amount of $23,483,446.00, plus interest, attorneys' fees, costs and other expenses.  ROA.000932-43.

On April 8, 2020, CLO HoldCo filed Proof of Claim No. 133 (the "Original Proof of Claim"), which asserted a claim for $11,340,751.26 on the basis of "Participation and Tracking Interests in investment funds."  ROA.002142-44.  In support, CLO HoldCo attached the Participation and Tracking Interests schedule as well as the documents detailing the transfer of those interests from Highland to CLO HoldCo.  CLO HoldCo expressly reserved the right to amend the claim. ROA.0021479.

### E.  The HarbourVest Settlement and First Amended CLO HoldCo Claim

On September 30, 2020, Highland filed that certain *Motion for Entry of an Order Approving Settlements with (A) the Redeemer Committee of the Highland Crusader Fund (Claim No. 72) and (B) the Highland Crusader Funds (Claim No. 81), and Authorizing Actions Consistent Therewith* (the "Redeemer Settlement Motion"). ROA.000825. The Redeemer Settlement Motion sought approval of that certain Stipulation (the "Stipulation") which, important here, provided that:

- The Redeemer Committee's Proof of Claim would be allowed in the amount of $137,696,610 as a general unsecured claim; and the Crusaders Funds' Proof of Claim would be allowed in the amount of $50,000 as a general unsecured claim.

- Highland consented to the cancellation of the Highland Crusader Interests (the "Cancelled LP Interests"); and

- The cancellation or extinguishment of the Cancelled LP Interests was intended to implement Sections F.a.v and F.a.x.2 of the Final Award.

ROA.00856-57.

On October 20, 2020, the Bankruptcy Court held a hearing on the Redeemer Settlement Motion. ROA.000944. At the hearing on the Redeemer Settlement Motion, Highland's representative testified that the Stipulation:

> was more straightforward than many of them, notwithstanding the complexity of the arbitration award, because there was an arbitration award. And it had been litigated in front of the arbitration panel, which was an esteemed panel, for a couple years, with tons of testimony, tons of documents, and a partial finding and then a final award that really hit on all the various issues with respect to disputes among the parties . . . and in our analysis . . . we feel confident that this is the best interest of the estate, the [Highland] interests, the creditors, the investors.

ROA.001022-23 (quoting testimony from James Seery at 79:17-80:9).  On October

22, 2020, the Bankruptcy Court entered the *Order Approving Debtor's Settlement*

*with (A) The Redeemer Committee of the Highland Crusader Fund (Claim No. 72)*

*and (B) The Highland Crusader Funds (Claim No. 81), and Authorizing Actions*

*Consistent Therewith* (the "Redeemer Settlement Order"), which approved the

Stipulation.  ROA.001200-01.

After the Redeemer Settlement Order was entered, CLO HoldCo's former

counsel corresponded with Highland counsel and, on October 21, 2020, amended

the Original CLO HoldCo Claim by filing Claim No. 198 (the "First Amended Proof

of Claim").  ROA.003389-90; ROA.002213.  In the First Amended Proof of Claim,

CLO HoldCo stated that: CLO HoldCo "understands that the Debtor has reached a

settlement with the Redeemer Committee … According to the Debtor, the

termination of the Debtor's interests in those funds served to cancel [CLO HoldCo's]

participation interests in the Debtor's interests in those funds.  Accordingly, [CLO

HoldCo]'s Claim Amount is reduced to $0."  ROA.002220.

In the First Amended Proof of Claim, CLO HoldCo asserted a claim for

$11,340,751.26 based on participation and tracking interests; reserved the right to

amend the proof of claim; and expressly asserted that the reduction in amount to $0

was based upon Highland's analysis of the effect of the Redeemer Settlement Order

on CLO HoldCo's Participation and Tracking Interests.  ROA.002218-20.  CLO

12

HoldCo attached the same documents in support as were attached to the Original Proof of Claim. ROA.002220.

### F. The Effective Date and Adversary Proceedings

On February 22, 2021, the Bankruptcy Court entered the order confirming the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.* (the "Plan"). ROA.002389. The effective date of the Plan was August 11, 2021. ROA.002390. The administrative claim bar date was set for forty-five days later (or September 25, 2021). ROA.002390.

Pre-confirmation, the Trustee's predecessor, the Official Committee of Unsecured Creditors (the "Committee") commenced that certain adversary proceeding against CLO HoldCo amongst others, Adv. Proc. No. 20-03195 (the "CLO HoldCo Adversary Proceeding"). After filing the CLO HoldCo Adversary Proceeding, the Committee declined to prosecute it, moving to stay it for ninety days rather than responding to CLO HoldCo's dispositive motion and motion to withdraw reference. CLO HoldCo Adversary Proceeding, Dkt. No. 46.[3] After the Trustee

---

[3] This Court can take judicial notice of proceedings in the Bankruptcy Court, which are publicly available. *See In re Royce Homes LP*, 466 B.R. 81, 86 n. 2 (S.D. Tex. 2012) (taking notice of bankruptcy court records in appeal to district court); *Anderson v. FDIC*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (taking judicial notice of proof of claim and noting both that bankruptcy court is unit of district court and that district court can take judicial notice of its own records); *In re Base Holdings, LLC*, No. 09-34269-SGJ-7, 2014 WL 895403, at *1 (N.D. Tex. Mar. 5, 2014); *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684, 688 n.9 (5th Cir. 2020) (taking judicial notice of arbitration order); *Anderson v. Wells Fargo Bank, N.A.*, 953 F.3d 311, 314 (5th Cir. 2020) (taking judicial notice of court judgments and opinions); *Funk v.*

took over the CLO HoldCo Adversary Proceeding, he too declined to prosecute, opting to move to further stay the proceeding. CLO HoldCo Adversary Proceeding, Dkt. No. 70. CLO HoldCo opposed a further stay and requested the Bankruptcy Court to require the Trustee to prosecute his lawsuit. *Id*. at Dkt. No. 74. At the August 28, 2021 hearing on the Trustee's request to further stay the CLO HoldCo Adversary Proceeding, the Bankruptcy Court asked if there were any pending proofs of claim, to which Trustee's counsel responded that CLO HoldCo had filed a proof of claim, to which counsel for CLO HoldCo stated:

> There is no pending proofs of claim. The only proof of claim on file is for zero amount on behalf of CLO Holdco because the very interests that the complaint complains about having been transferred to ultimately CLO Holdco were canceled; therefore, of no value. And CLO Holdco had previously had a proof of claim on file, but amended that proof of claim to reflect a zero amount. …I mean, a pending zero proof of claim is, I guess, a pending proof of claim, but it's for zero, and there's no --
> ,
> THE COURT: I don't know that means. I don't know what a proof of claim for zero --
> [CLO HoldCo Counsel]: I don't, either, but I didn't do it.
>
> THE COURT: I don't know why you wouldn't withdraw --
>
> [CLO HoldCo Counsel]: I didn't do it, but it's for zero.

---

*Stryker Corp*., 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice of publicly available documents and transcripts produced by Food and Drug Administration); *Lovelace v. Software Spectrum, Inc*., 78 F.3d 1015, 1018 (5th Cir. 1996) (taking judicial notice of filings with Securities and Exchange Commission); *In re Imperial Petroleum Recovery Corp*., No. 13-30466, 2022 WL 90607, at *3 (Bankr. S.D. Tex. Jan. 7, 2022).

THE COURT: I don't know why you wouldn't withdraw the proof of claim.

[CLO HoldCo Counsel]:Well, I can withdraw it. It was done before I got -- I became counsel here. And it was done to -- on the basis of a resolution of issues regarding the Crusader Redeemer litigation and -- and because the ultimate result was that the basis for the proof of claim was extinguished, the proof of claim was either amended -- it was amended to reflect a zero amount. And I can certainly withdraw it because it is a zero amount.

ROA.003580-81.

The Bankruptcy Court went on to grant the requested stay, and then on October 15, 2022, the Trustee dismissed the CLO HoldCo Adversary Proceeding. *Id*. at. Dkt. No. 96.  That same day, the Trustee commenced that certain adversary proceeding, Adv. Proc. No. 21-03076 (the "Kirschner Adversary Proceeding"), against CLO HoldCo, amongst others, repackaging some of its allegations in the CLO HoldCo Adversary Proceeding.

### G. The Second Amended Proof of Claim

On November 9, 2021, the Trustee filed that certain *Omnibus Objection to Certain Amended and Superseded Claims and Zero Dollar Claims* (the "Claim Objection") which objected to the CLO HoldCo's First Amended Proof of Claim. ROA.001202-14.  On January 11, 2022, CLO HoldCo filed Claim No. 254 (the "Second Amended Proof of Claim"), which amends the First Amended Proof of Claim.  ROA.002284-87.  The Second Amended Proof of Claim, just like the First

Amended Proof of Claim and Original Proof of Claim, asserts a claim on the basis of "Participation and Tracking Interests in investment funds" and attached the same documentation in support. ROA.002285; ROA.002297. Based upon those same Participation and Tracking Interests, CLO HoldCo advanced a new theory of recovery:

> (i) pursuant to the applicable Participation and Tracking Interest Schedule, Highland is required to pay to CLO HoldCo the proceeds of any disposition of any interest with respect to or in the HIGHLAND Crusader Interests; (ii) in the Arbitration, the Highland Crusader Interests was disposed of and in return, Highland received a credit against the damage award for the purchase price of the cancelled Highland Crusader Interests; and (iii) Highland therefore received proceeds of a disposition of the Highland Crusader Interests through this credit and owes payment of those amounts to CLO HoldCo.

ROA.002296.

That same day, CLO HoldCo filed that certain *Motion to Ratify Second Amended Proof of Claim and Response to Objection to Claim* (the "Motion to Ratify") that along with the Second Amended Proof of Claim is the subject of this appeal. ROA.001220. The Motion to Ratify was styled as a response to the Claim Objection and explained that because FED. R. CIV. P. 15 did not apply, CLO Holdco was not required to seek leave to file the Second Amended Proof of Claim. ROA.001222.

After filing the Second Amended Proof of Claim, in the Kirschner Adversary Proceeding, CLO HoldCo also filed a *Motion to Withdraw the Reference* ("Motion

to Withdraw the Reference").  Kirschner Adversary Proceeding, Dkt. No. 59.  In

the Motion to Withdraw the Reference, CLO HoldCo briefed that:

> We pause here, upfront, to recognize (as will be more fully discussed
> in the Brief in Support) that CLO HoldCo has filed an amended proof
> of claim (see Proof of Claim No. 253), and it is therefore arguable that
> CLO HoldCo—if the Get Good Avoidance Actions were against it,
> standing alone (which would make no sense as any liability of CLO
> HoldCo could only be derivative of the liability of Get Good, HDF,
> DAF HoldCo and DAF Fund)—might not be able to argue that under
> *Stern*, *Granfinanciera*, *Langenkamp*, and *Katchen v. Landy*, it holds a
> right to trial by jury.

*Id*. at Dkt. No. 59 at ¶12.

On February 1, 2022, the Trustee filed his objection to the Motion to Ratify

asserting that compelling circumstances are required to amend a claim after

confirmation of a plan, that the Second Amended Proof of Claim did not set forth a

viable claim, and that the Motion to Ratify should be denied and the Second amended

Proof of Claim extinguished.  ROA.001239-40.

### H. The Bankruptcy Court's Ruling

On August 4, 2022, the Bankruptcy Court heard and issued an oral ruling

denying the Motion to Ratify, which was incorporated into its order.  ROA.00008.

The Bankruptcy Court determined that the standard to be applied to the Motion to

Ratify was one of discretion to the Bankruptcy Court and that (i) the delay in filing

the Second Amended Proof of Claim was too long and too significant to permit an

amendment to the proof of claim absent a showing of compelling circumstances; (ii)

CLO HoldCo may have waived its claim or should be estopped from asserting a claim based on its previous statements in the CLO HoldCo Adversary Proceeding; and (iii) the basis for the Second Amended Proof of Claim was frivolous. ROA.000158-60.

## VII.   SUMMARY OF ARGUMENT

In *In re Kolstad*, the Fifth Circuit established the dual considerations that should guide a court when determining whether to permit a post-bar date amendment to a proof of claim. 928 F.2d 171 (5th Cir. 1991), *cert. denied* 502 U.S. 958, 112 S. Ct. 419, 116 L. Ed. 2d 439 (1991). These considerations are: (1) whether the creditor is attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim or events such as an ongoing or recently commenced audit; and (2) the degree and incidence of prejudice, if any, caused by the creditor's delay. *Id*. at 176, n.1. As other courts in this circuit have recognized, the *Kolstad* test is good law and binding on courts in this circuit. *In re Walker*, 526 B.R. 187, 190 (E.D. La. 2015); *In re Entergy New Orleans, Inc.,* No. 05-17697, 2008 WL 2789313, at *3 (Bankr. E.D. La. July 17, 2008).

Here, however, the Bankruptcy Court found *Kolstad* inapplicable, and it instead decided that a heightened standard applies to post-confirmation amendments.

But creating a heightened standard for post-confirmation amendments is neither logical nor supported by Fifth Circuit law.

To bolster its ruling, the Bankruptcy Court also implied that CLO HoldCo had waived its claim or should be estopped from pursuing its claim. CLO HoldCo did not demonstrate any knowing intent to relinquish its rights nor did it take an advertent contrary position that the Bankruptcy Court accepted. Rather, CLO HoldCo filed the First Amended Proof of Claim with full reservation, and counsel's passing reference to the value of the claim was merely an offhand response to a question in opening statements on an unrelated motion in another proceeding (that was stayed until it was eventually dismissed).

Finally, the Bankruptcy Court determined that it would be an exercise in futility to allow the amendment because the Second Amended Proof of Claim set forth a "frivolous" theory. ROA.00077 at 66:4-12. The Bankruptcy Court's analysis was guided by the erroneous inference that the cancellation or extinguishment of the Highland Crusader Interests was not any "other disposition of any interest with respect to or in the Highland Crusader Interests." But given the Fifth Circuit standard for futility of amendment—resolving every doubt in CLO HoldCo's favor—and court's broad interpretation of the catchall "other disposition" term, the Bankruptcy Court's determination of futility is wholly supported by law or fact.

## VIII.   ARGUMENT

As explained by the Fifth Circuit in *Matter of Waindel*:

> The leading Fifth Circuit case on allowance of amendments to proofs of claim is *In re Kolstad*. In *Kolstad*, we explained that **"[a]mendments to timely creditor proofs of claim have been liberally permitted** to 'cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.'"

65 F.3d 1307, 1311-12 (5th Cir. 1995) (cleaned up) (emphasis added).  In *Kolstad*, the Fifth Circuit stated that deciding whether to allow an amendment generally involves two questions: (1) whether the claimant was attempting to assert a "new" claim that could not have been foreseen from the earlier claim; and (2) the amount of prejudice, if any, caused by the delay.  *In re Kolstad,* 928 F.2d at 176 n. 7.  These dual considerations are referred to as the "*Kolstad* test," and courts within this Circuit are bound to follow it.  *Entergy New Orleans, Inc.,* 2008 WL 2789313, at *3; *In re Walker*, 526 B.R. at 190 (recognizing that "[*Kolstad*] has not been overruled or otherwise modified by the U.S. Court of Appeals for the Fifth Circuit and this Court is bound to follow it.").

Here, the Bankruptcy Court eschewed *Kolstad*, finding it inapplicable because it was factually different in that the Second Amended Proof of Claim was filed post-confirmation and farther past the bar date.  ROA.000317-19.  Then, the Bankruptcy Court went on to rule without analyzing the considerations mandated by the Fifth Circuit, instead basing its ruling on a failure to show compelling circumstances,

20

waiver or estoppel, and a finding that the underlying claim is frivolous. As will be addressed herein, while these findings were themselves deeply flawed, the Bankruptcy Court erred as a matter of law in declining to apply *Kolstad* and abused its discretion in denying the Motion to Ratify based on an improper legal standard.

### A. The *Kolstad* test applies here, and under that test, the Second Amended Proof of Claim should have permitted.

The Bankruptcy Court found that *Kolstad* should not be applied here because it was factually different insofar as (i) the time between amendments was longer; and (ii) in *Kolstad* the amendment was before confirmation and here, the amendment was post-confirmation. *Kolstad*, 928 F.2d at 172; ROA.000241-42. Such a constrained reading of *Kolstad's* applicability cannot be squared with the subsequent Fifth Circuit case law that cites to *Kolstad* for the proposition that: "[a]mendments to proofs of claim are **freely allowed** where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim." *Matter of Alliance Operating Corp.*, 60 F.3d 1174, 1175 (5th Cir. 1995) (emphasis added).

### 1. *Kolstad* applies post-confirmation.

In finding that amending a proof of claim post-confirmation requires compelling circumstances, the Bankruptcy Court relied on and agreed with *In re Dortch,* No. 07-45041-DML-13, 2009 WL 6764538, at n.3 (Bankr. N.D. Tex. Dec. 1, 2009) and *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053, 1056 (11th Cir. 2011).

21

ROA.00241.  These cases are not persuasive and they do not justify ignoring the framework established by *Kolstad*.

First, the Eleventh Circuit standard from *Winn Dixie* conflicts with the standard established for this circuit and was expressly premised upon the prejudicial effect of a post-confirmation amendment.  *Winn-Dixie Stores*, 639 F.3d at 1056 ("[A]mendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors").  This concern is already a part of the *Kolstad* test.  In addition, rather than relying on the Fifth Circuit *Kolstad* standard for amendments of proofs of claim, the bankruptcy court in *Dortch* relied on what it termed "a general rule" that confirmation of a plan triggers an additional requirement to show compelling circumstances to amend a claim.  *Id*. at *1.

But this rule has never been adopted by the Fifth Circuit and has indeed been rejected by others.  In *In re Ben Franklin Hotel Associates*, for example, the Third Circuit found that the bankruptcy court did not abuse its discretion when, post-confirmation, it permitted a creditor to amend its proof of claim to assets a new theory of recovery.  186 F.3d 301 (3d Cir. 1999).  In a post-confirmation posture, the Third Circuit held that: "amendments to proofs of claim should be freely allowed where the purpose is to cure defects in a claim as originally filed, to describe a claim with greater particularity, or to plead new theories of recovery on facts set forth in the original claim." *Id*.  Interestingly, the Third Circuit standard for amendments to proofs of

22

claim (including post-confirmation) is identical to the Fifth Circuit *Kolstad* standard, i.e. "[a]mendments to timely creditor proofs of claim have been liberally permitted to cure a defect in the claim as originally filed, to describe the claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim." 928 F.2d at 175.

In fact, other courts in this district have recognized that the same *Kolstad* standard applies to requests to amend claims even after confirmation of a plan. For instance, in *In re Knowles*, Judge Fish affirmed Judge McGuire's decision to permit post-confirmation amendment to a proof of claim, specifically stating that the standard remained "even after confirmation of a [plan]." No. 396-35673-RCM-13, 1999 WL 718654, at *1 (N.D. Tex. Sept. 14, 1999). And in *In re Goodman*, the debtor argued that confirmation should preclude the IRS from amending its claim, and Judge Felsenthal, citing to *Knowles*, rejected this contention. 261 B.R. 415, 417 (Bankr. N.D. Tex. 2001). In *U.S. v. Johnston*, Judge Means found that the bankruptcy court abused its discretion in denying a request for a post-confirmation amendment to a proof of claim. In doing so, the district court expressly rejected the debtor's argument that the confirmation of the plan barred post-confirmation amendments to claims, citing to *Knowles*, *Goodman*, amongst others. 267 B.R. 717, 721 (N.D. Tex. 2001), *aff'd sub nom. In re Johnston*, 48 F. App'x 917 (5th Cir. 2002).

Further, this heightened "compelling circumstances" standard has no place in the Fifth Circuit because it is redundant of considerations already incorporated into the *Kolstad* standard.  Courts have justified adopting the heightened standard by citing to the disruption that could result from the liberal amendment of claims post-confirmation or post-effective date. *See, e.g.*, *Holstein v. Brill*, 987 F.2d 1268, 1270–71 (7th Cir. 1993) ("[P]ost-confirmation amendments . . . may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors"); *Winn-Dixie Stores*, 639 F.3d at 1056 ("[A]mendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors"). But under the Fifth Circuit's *Kolstad* test, which requires courts to consider **the degree and incidence of prejudice, if any, caused by [the creditor]'s delay**," that concern is already addressed. *Kolstad*, 928, F.2d at n.7) (emphasis added).

### 2. Here, confirmation of the Plan is of no particular significance, and there is no prejudice to the estate.

Here, the Bankruptcy Court's sole comment regarding prejudice is that: "I further find the estate would be prejudiced if it had to litigate this what I consider frivolous theory so late in the case." ROA.00243.  This is in keeping with the sole prejudice claimed by the Trustee: attorney's costs.  ROA.001241.  But the Second

Amended Proof of Claim is not frivolous, and importantly, attorney's fees alone do not create prejudice sufficient to refuse amendments.[4]

In the context of amendments under FED. R. CIV. 15, Fifth Circuit law is clear that attorney's fees are insufficient prejudice to preclude amendment. *Crossland v. Canteen Corp*., 711 F.2d 714, 729 (5th Cir. 1983); *Aguirre v. S&B Eng'rs & Constructors LLC*, No. 1:13-CV-384, 2014 WL 12906440, at *1 (E.D. Tex. Sept. 22, 2014) (finding an absence of prejudice where the only prejudice argued by defendant is the extra time and attorney's fees that will be incurred in preparing an answer to the newly detailed factual allegations therein).

Rather, prejudice means a true harm to the estate or manifest unfairness. For instance, in *Mason*, after the debtor completed all chapter 13 plan payments, paying all unsecured debt and arrearages on his mortgage, his mortgage company sought to increase its claim by $12,608.62. 520 B.R. 508, 517 (Bankr. S.D. Miss. 2014). The bankruptcy court, distilling other post-confirmation amendment cases, explained that where the debtor had already paid the filed claim exactly as requested and completed plan payments, the debtor is unfairly prejudiced by an amendment. *Id*. at 517.

---

[4]     CLO HoldCo at argument did acknowledge that if the Second Amended Proof of Claim were in fact frivolous, that accruing attorney fees would constitute prejudice. But, the Second Amended Proof of Claim is not frivolous.

Here, there is no assertion, nor could there be, of any like prejudice. The Trustee's suggestion that the effective date is a milestone precluding amendment of a proof of claim is belied by the fact that as of the effective date, **the administrative claims bar date had not yet even passed**. As the Fifth Circuit explained in *Kolstad*, there is little correlation between bar dates and relative amounts in which creditors will share in distributions because before the claims litigation process is completed, the universe of claims is unknown.

The universe of claims was unknown as of the effective date and remains unknown today. *See generally* Kirschner Adversary Proceeding (the Litigation Trustee asserting hundreds of millions of dollars of claims). The Plan is effectively a liquidating or wind-down plan, so there can only yet be the very roughest of possible parameters for the range of potential distributions. *See* ROA.2851. Finally, the Second Amended Proof of Claim by CLO HoldCo represents a barely perceptible percentage [<2%] of the overall claims on file. *See* Bankruptcy Case, Dkt. No. 3582 (reflecting an October 2022 distribution to general unsecured claims of $248,999,332—accounting for 60% of the $397,485,568 in allowed general unsecured claims).

Unlike the cases where a debtor has paid all or most of his creditors and then years later a creditor wants more, at the time of the amendment requested here, the estate had made very few distributions to general unsecured claims (and to date has

26

only made about 60% of allowable distributions) and the Second Amended Proof of Claim, at its highest estimated amount, amounts to less than two percent of total general unsecured claims.  Therefore, the Second Amended Proof of Claim does not generate the type of prejudice warned of in *Kolstad*.

### 3. The Second Amended Proof of Claim merely asserts a new legal theory based on the facts set forth in the original claim.

The Fifth Circuit and lower courts within it are clear and consistent that amendments to timely creditor proofs of claim are liberally permitted to plead a new theory of recovery on the facts set forth in the original claim.  *See e.g. Waindel*, 65 F.3d at 1311; *Kolstad*, 928 F.2d at 175 (quoting *In re Int'l Horizons, Inc*., 751 F.2d 1213, 1216 (11th Cir.1985); *In re Jazz Casino Co., L.L.C*., No. 03-3018, 2004 WL 2095616, at *13 (E.D. La. Sept. 7, 2004), *aff'd sub nom. In re Jazz Casino Co. LLC*, 134 F. App'x 749 (5th Cir. 2005); *In re Perry*, 411 B.R. 368, 374 (Bankr. S.D. Tex. 2009); *In re Pilgrim's Pride Corp*., 442 B.R. 522, 536 at n.25 (Bankr. N.D. Tex. 2010); *In re Vega*, No. 15-34014, 2017 WL 2954762, at *2 (Bankr. S.D. Tex. July 10, 2017).

The Original Proof of Claim asserts a general unsecured claim against the estate based upon the Participation and Tracking Interests, as did the First Amended Proof of Claim.  The Second Amended Proof of Claim likewise asserts a general unsecured claim based upon those same Participation and Tracking Interests and the same supporting documentation. It changed merely in that it now asserts a new

theory of recovery based upon those very same facts. Specifically, rather than asserting a claim for the net asset value of the Highland Crusaders Interests, CLO Holdco seeks to amend to assert a claim for the offset Highland received for the cancellation of the Highland Crusader Interests. This is a plainly permissible new theory of recovery on the facts set forth in the original claim.

Therefore, applying the *Kolstad* test, there is no prejudice to the estate that could warrant denying the amendment and the Second Amended Proof of Claim merely sets forth a new theory of recovery on the facts set forth in both the Original Proof of Claim and the First Amended Proof of Claim. Under governing Fifth Circuit authority, this is the type of amendment that should be liberally permitted, and the refusal to allow it was an abuse of discretion. *See Johnston*, 267 B.R. at 722 (finding an abuse of discretion where the bankruptcy court disallowed a post-confirmation amendment to claim where the proposed amendment satisfied the requirements of *Kolstad*).

### B. CLO HoldCo did not waive its rights to amend its First Amended Proof of Claim, nor should it be estopped from doing so.

While the Bankruptcy Court stopped short of expressly basing its ruling on the theories of waiver or estoppel, it concluded that:

> CLO Holdco has, with its statements on the record in August 2021, you know, we have a zero proof of claim. I'll withdraw it if I need to, but we don't have a proof of claim, Ms. Newman. With that, with the emails of prior counsel, CLO Holdco has stepped at least almost in the lane of waiver and estoppel, if not entirely into the lane. That is another fact

> weighing heavy on the Court's mind in exercising its discretion. It feels
> darn close to waiver and estoppel, if not exactly precisely there.

ROA.00159.  Waiver is the voluntary or intentional relinquishment of a known right.

*Bunner v. Dearborn Nat'l Life Ins. Co.*, 37 F.4th 267, 273 (5th Cir. 2022).  "Judicial

estoppel has three elements: (1) The party against whom it is sought has asserted a

legal position that is plainly inconsistent with a prior position; (2) a court accepted

the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738

F.3d 126, 129 (5th Cir. 2013).  While distinct, both doctrines require that a party act

in a knowing, advertent manner.

### 1. CLO HoldCo consistently reserved the right to amend its proof of claim, and the First Amended Proof of Claim did not result in waiver or estoppel.

The Trustee and the Bankruptcy Court point to emails from CLO HoldCo's

counsel agreeing to amend the Original Proof of Claim as evidence of waiver or

support for estopping CLO HoldCo from further amendment.  ROA.00076.  CLO

HoldCo does not dispute that it voluntarily amended the Original Proof of Claim by

filing the First Amended Proof of Claim.  But this exchange must be viewed in light

of the fact that at the time, Highland, as CLO HoldCo's investment advisor, advised

that there was no value to the Participation and Tracking Interests.  So in amending

its claim to $0, CLO HoldCo expressly relied upon information from its investment

advisor concerning the Highland Crusader Interests.

And importantly, CLO HoldCo did not withdraw its claim entirely; rather it amended the claim to $0 based on the information it had at the time, with full reservation of rights to any additional amendments. ROA.002220. There was never any withdrawal, agreed expungement, of order of disallowance. The First Amended Proof of Claim was neither the intentional relinquishment of a right nor an inconsistent position accepted by the court that could justify waiver or estoppel. A finding to the contrary would mean that creditors trigger waiver and estoppel by the mere filing of a proof of claim and that amendments should be disallowed as a general matter of law. But the Fifth Circuit liberally permits proof of claim amendments under *Kolstad*, and the amendment here handily satisfies that test.

### 2. A comment in a separate adversary proceeding related to a motion to stay is not a knowing waiver or advertent inconsistent position.

Next, the Bankruptcy Court and the Trustee focus on counsel for CLO HoldCo's response to the Bankruptcy Court's question about proofs of claims in the now-dismissed, then-stayed CLO HoldCo Adversary Proceeding. During opening statements at a hearing on the Trustee's request to further stay the CLO HoldCo Adversary Proceeding, the following exchange occurred:

> THE COURT: I don't know that means. I don't know what a proof of claim for zero –
>
> [CLO HoldCo Counsel]: I don't, either, but I didn't do it.
>
> THE COURT: I don't know why you wouldn't withdraw.

\--

[CLO HoldCo Counsel]: I didn't do it, but it's for zero.

THE COURT: I don't know why you wouldn't withdraw the proof of claim.

[CLO HoldCo Counsel]:Well, I can withdraw it. It was done before I got -- I became counsel here. And it was done to -- on the basis of a resolution of issues regarding the Crusader Redeemer litigation and -- and because the ultimate result was that the basis for the proof of claim was extinguished, the proof of claim was either amended -- it was amended to reflect a zero amount. And I can certainly withdraw it because it is a zero amount

ROA.003580-81.

Importantly, the hearing where this exchange occurred was entirely unrelated to CLO HoldCo's motion to withdraw the reference or the status of CLO HoldCo's proof of claim, and the statements by counsel were entirely unrelated to the motion to stay being heard. Counsel for CLO HoldCo merely stated that he did not know why there was a claim for $0, and upon further questioning by the Bankruptcy Court about withdrawal, agreed that if it was a claim for zero dollars, it could be withdrawn.  ROA.003581.

Had those statements been made before the Bankruptcy Court in connection with a hearing on its proof of claim, perhaps they could be construed differently. But under these circumstances, the statements cannot be reasonably construed as either waiver or a basis for estoppel. During the Bankruptcy Court's questioning about a topic not before it at the hearing, counsel highlighted his lack of detailed

knowledge about the First Amended Proof of Claim.  CLO HoldCo's purposeful, affirmative position on the topic came later in the separate Kirschner Adversary Proceeding when it withdrew the reference and made clear that it had a pending proof of claim.  To find that waiver results by responding to a court's question on an issue not before the court in opening statements in an unrelated matter, after expressing a lack of knowledge about the subject, disregards the requirement that any waiver be knowing. Further, the statements at that hearing could not have been a legal position on CLO HoldCo's proof of claim that was accepted by the court because the hearing, and thus the Bankruptcy Court's determination after the hearing, concerned the unrelated issue of whether to continue the existing stay of the CLO HoldCo Adversary Proceeding. The statements therefore do not give rise to waiver or estoppel.

### C. The Second Amended Proof of Claim sets forth a viable claim against Highland.

In refusing to allow the Second Amended Proof of Claim, the Bankruptcy Court appeared to rely in part on its conclusion that the amendment was based on a "frivolous theory" and was therefore prejudicial:

> [T]his wasn't a hearing on the merits, but I read the exhibits, I read the documents, and it seems pretty clear to me that the Debtor's interest in the Crusader Funds was canceled as part of the 9019 settlement with the Crusader/ Redeemer Fund, and that means CLO Holdco's participation and tracking interests were canceled.

32

ROA.00077. While the futility or frivolous nature of an amendment is not expressly part of the *Kolstad* test, such considerations may speak to whether an amendment is prejudicial. And in the context of amending complaints, the Fifth Circuit has instructed that an amendment is futile if it would fail to survive a FED. R. CIV. P. 12(b)(6) motion. *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co*., 898 F.3d 461, 478 (5th Cir. 2018). Applied here, the question therefore would be whether, in the light most favorable to CLO HoldCo and with every doubt resolved in its favor, the Second Amended Proof of Claim states any valid claim for relief. *Stripling v. Jordan Prod. Co*., LLC, 234 F.3d 863, 873 (5th Cir. 2000); *Rainbow Energy Mktg. Corp. v. DCT, LLC*, No. 1:21-CV-313-RP, 2022 WL 2188144, at *3 (W.D. Tex. June 17, 2022).

The crux of the Bankruptcy Court's reasoning is that a cancellation or extinguishment of the Highland Crusader Interests was not an "other disposition of any interest with respect to or in the Highland Crusader Interests." If a cancellation or extinguishment is an "other disposition of any interest with respect to or in the Highland Crusader Interests," then Highland owed CLO HoldCo any proceeds it received for that disposition—which here, was an offset against the damages award in an amount equal to the purchase price paid by Highland for the Highland Crusader Interests. Where the phrase "other disposition" follows a specific list of transactions, the United States Supreme Court has interpreted this phrase as a catchall that is

33

meant to be interpreted broadly. *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 165, 132 S. Ct. 2156, 2172, 183 L. Ed. 2d 153 (2012). Bearing the Fifth Circuit standard for futility of amendments in mind—with every doubt resolved in CLO HoldCo's behalf—the cancellation or extinguishment of the Highland Crusader Interests can easily be construed as an "other disposition of any interest with respect to or in the Highland Crusader Interests." In fact, because Highland received consideration in dollars as a result of the extinguishment of the Highland Crusader Interests, the "extinguishment" was no different than a sale by Highland of the Highland Crusader Interests back to the Onshore Crusader Fund and the Offshore Crusader Fund for a purchase price equal to the original purchase price paid by Highland for the Highland Crusader Interests. Because Highland received the purchase price by means of offset, Highland owed the amount of that consideration, received upon "extinguishment" to the holder of the Participation and Tracking Interests—CLO HoldCo.

The Trustee argued that the Second Amended Proof of Claim "fails right out of the gate" because the Final Award never went into effect. But the Stipulation was ***expressly*** based upon and meant to implement the portions of the Final Award and Partial Final Award that gave Highland a credit for the purchase price of the Highland Crusader Interests. *See* ROA.00856-57 ("The cancellation or extinguishment of the Cancelled LP Interests was intended to implement ¶F.a.v …

34

of the Final Award" and "[the Partial Final Award] §§ III(H)(25)"); ROA.002548-49 (Final Award, ¶F.a.v.); ROA.002492 (Partial Final Award, at ¶III.H.25).  There is no recitation in the Stipulation or elsewhere that any material alterations were made to the provision that the parties intended to implement.  Given that the offset to Highland for the purchase price of the Highland Crusader Interests was an integral part of these provisions from the arbitration awards, one would assume there would be some notation if Highland were giving up any such credit.  While CLO HoldCo is not privy to the exact method of calculation for the amounts of the Redeemer Committee's allowed claims, it seems unlikely (if not impossible) that Highland would enter into (and the Bankruptcy Court would approve) a settlement that was **worse** for Highland than the Final Award itself.  *See* ROA.000835 (filing the Redeemer Settlement Motion pursuant to FED. R. BANKR. P. 9019 which requires a compromise be fair, reasonable, and in the best interest of the estate).  Highland certainly has never made the argument that under the Stipulation it received less than if there had been no settlement.

Highland's obligations to the holder of the Participation and Tracking Interests are set forth in the Participation and Tracking Interests schedule which was submitted with each of CLO HoldCo's proofs of claims.  ROA.0002176-77 (Original Proof of Claim); ROA.0002277-78 (First Amended Proof of Claim); ROA.2300-02 (Second Amended Proof of Claim).  There is no language in these

documents, nor anywhere else, that excuses Highland's performance of its payment obligations to the holder of the Participation and Tracking Interests if the disposition of the Highland Crusader Interests was a cancellation or extinguishment. The Stipulation does not alter, nor even mention, Highland's obligations to CLO HoldCo for the Participation and Tracking Interests. Therefore, regardless of Highland's agreement to cancel or extinguish the Highland Crusader Interests, it still had an obligation to pay CLO HoldCo ***_any proceeds_*** it received based upon any "other disposition of any interest with respect to or in the [Highland Crusader Interests]." Highland's dollar liability to the Redeemer Committee was expressly offset by a credit awarded for the purchase price for the Highland Crusader Interests. So, Highland owed CLO HoldCo whatever credit against the damages award it received and never paid any such amounts. The Second Amended Proof of Claim is far from a "frivolous theory," and therefore, the requested amendment is not futile, and the Bankruptcy Court erred in finding otherwise.

## IX.   CONCLUSION AND RELIEF SOUGHT

As other courts in this Circuit have recognized: the *Kolstad* test is good law and binding on courts in this Circuit. *Walker*, 526 B.R. at 190. There is no basis in Fifth Circuit law, nor logical reason, to ignore *Kolstad* when an amendment is post-confirmation because *Kolstad* requires courts consider actual prejudice to the estate. Had the Bankruptcy Court applied *Kolstad* here, it would have been clear that the

36

Second Amended Proof of Claim (i) sets forth a permissible new theory of recovery based upon the same facts as the First Amended Proof of Claim and the Original Proof of Claim; and (ii) does not prejudice the estate.   Therefore, CLO HoldCo respectfully requests that this Court vacate that certain Order Denying Motion to Ratify because the Bankruptcy Court applied the wrong legal standard.

## X.   CERTIFICATE OF COMPLIANCE

1) This document complies with the word limit of FED. R. BANKR. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by FED. R. BANKR. P. 8015(g): this document contains 8,930 words; and

2) This document complies with the typeface requirements of FED. R. BANKR. P. 8015(a)(5) and the type-style requirements of FED. R. BANKR. P. 8015(a)(6) because: this document has been prepared in a proportionally spaced typeface Microsoft Word in size 14 font, Times New Roman.

*/s/ Louis M. Phillips*
Louis M. Phillips
November 3, 2022