CASE NO. 3:22-cv-02051-B

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

HIGHLAND CAPITAL MANAGEMENT, L.P.
(Debtor)

CLO HOLDCO LTD
(Appellant)

v.

MARC KIRSCHNER
*Litigation Trustee for the Highland Litigation Sub-Trust*
(Appellee)

On appeal from the United States Bankruptcy Court for the Northern District of
Texas, Dallas Division

**ORIGINAL APPELLEE BRIEF**
**FILED ON BEHALF OF MARC KIRSCHNER**

Filed by
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
Robert Loigman (admitted *pro hac vice*)
Deborah Newman (admitted *pro hac vice*)
Aaron Lawrence (admitted *pro hac vice*)
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000

**SIDLEY AUSTIN LLP**
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300

## I.     <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Appellee Marc Kirschner, as Litigation Trustee for the Highland Litigation Sub-Trust (the "<u>Trustee</u>"), states that no other debtor is a party to this case other than the debtor named in the caption, Highland Capital Management, LP ("<u>HCMLP</u>" or the "<u>Debtor</u>"), and that no publicly held corporation owns more than 10% of its stock, nor does it have a parent corporation.

## II.   <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   CORPORATE DISCLOSURE STATEMENT ...................................................i

II.   TABLE OF CONTENTS ............................................................................. ii

III.   TABLE OF AUTHORITIES ........................................................................ iii

IV.   STATEMENT OF ISSUES PRESENTED AND
STANDARD OF REVIEW .........................................................................1

V.   STATEMENT OF THE CASE ....................................................................2

    A.   The Dispute between HCMLP and the Redeemer Committee
over the Joint Plan and Scheme Leads to Arbitration and
HCMLP's Bankruptcy............................................................................2

    B.   CLO Holdco Files First Proof of Claim Based on Participation
and Tracking Interests .............................................................................4

    C.   The Settlement Between HCMLP and Redeemer Committee
Rendered CLO Holdco's Tracking & Participation Interests
Worthless and Prompted CLO Holdco to Amend The Amount
of Its Proof of Claim to Zero Dollars .....................................................5

    D.   CLO Holdco Acknowledges That Amending Its Proof of Claim
to Zero Dollars Was Equivalent to Withdrawing the Claim................9

    E.   CLO Holdco Files the Purported Second Amendment to its
Proof of Claim .......................................................................................11

    F.   The Bankruptcy Court's Ruling .........................................................13

VI.   SUMMARY OF ARGUMENT....................................................................14

VII.   ARGUMENT..............................................................................................16

VIII.   CONCLUSION AND RELIEF SOUGHT...................................................31

IX.   CERTIFICATE OF COMPLIANCE ..........................................................32

# III.   TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. S&B Eng'rs & Constructors LLC*,
   2014 WL 12906440 (E.D. Tex. Sept. 22, 2014) ..................................................30

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
   632 F.3d 148 (5th Cir. 2010) ...............................................................................2

*Crossland v. Canteen Corp.*,
   711 F.2d 714 (5th Cir. 1983) ..............................................................................30

*Holstein v. Brill*,
   987 F.2d 1268 (7th Cir. 1993) ............................................................................23

*In re Ben Franklin Hotel Associates*,
   186 F.3d 301, 309 (3d Cir. 1991) .......................................................................24

*In re Benjamin Coal Co.*,
   978 F.2d 823 (3d Cir. 1992) ...............................................................................23

*In re Dortch*,
   2009 WL 6764538 (Bankr. N.D. Tex. Dec. 1, 2009)................. 15, 18, 22, 25, 26

*In re Goodman,*
   261 B.R. 415 (Bankr. N.D. Tex. 2001) ...............................................................24

*In re Knowles*,
   1999 WL 718654 (N.D. Tex. Sept. 14, 1999) .....................................................24

*In re Kolstad*,
   928 F.2d 171 (5th Cir. 1991) ........ 1, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26

*In re Winn-Dixie Stores, Inc.*,
   639 F.3d 1053 (11th Cir. 2011) ........................................ 22, 25, 26, 28

*Matter of Waindel*,
   65 F.3d 1307 (5th Cir. 1995) ................................................................................2

*U.S. v. Johnston*,
   267 B.R. 717 (N.D. Tex. 2001) ...........................................................................25

*UBS Securities LLC et al. v. Highland Capital Management LP*,
   Case No. 3:20-cv-03408-G at Docket No. 40 (N.D. Tex. 2020) .........................7

**Statutory Authorities**

11 U.S.C. § 1127 .........................................................................................................22

11 U.S.C. § 1141(d)(1)(A) ..........................................................................................22

**Rules and Regulations**

Fed. R. Bankr. P. 8015(a) ............................................................................................32

Fed. R. Bankr. P. 8015(a)(7)(B) ..................................................................................32

Fed. R. Bankr. P. 8015(g) ............................................................................................32

Fed. R. Bankr. P. 8015(h) ............................................................................................32

Appellant CLO HoldCo, Ltd. ("CLO Holdco") appealed from the United States Bankruptcy Court for the Northern District of Texas's (the "Bankruptcy Court") *Order Denying Motion to Ratify Second Amended Proof of Claim and Expunging Claim*, entered on August 17, 2022 (the "Order"). ROA 000249.  For the reasons set forth below, CLO Holdco's appeal is without merit and the Bankruptcy Court's Order should be affirmed.

### IV.    STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW

1.    Whether the Bankruptcy Court abused its discretion in denying CLO Holdco's *Motion to Ratify Second Amendment to Proof of Claim [Claim No. 198] and Response to Objection to Claim* (the "Motion"), which asked the Bankruptcy Court to "ratify" CLO Holdco's proposed second amendment to its proof of claim, which had previously been amended to zero, more than a year-and-a-half after the general bar date for filing proofs of claim (the "Bar Date"), nearly one year after the Debtor's Plan[1] was confirmed, and six months after the Plan's effective date.

**Standard of review:** A bankruptcy court's decision not to allow a tardily filed amended claim to "relate back" to the original, timely filed proof of claim is reviewed for abuse of discretion.  *In re Kolstad*, 928 F.2d 171, 173 (5th Cir. 1991);

---

[1]   Capitalized terms not otherwise defined herein have the meanings given to them in the *Original Appellant Brief Filed on Behalf of CLO Holdco Ltd.*

*Matter of Waindel*, 65 F.3d 1307, 1311-12 (5th Cir. 1995).  Only where a lower court's "denial of a motion for leave to amend [is] based ***solely*** on futility," will the appellate court apply a de novo standard of review.  *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010) (emphasis added).  Otherwise, the lower court's denial of a motion for leave to amend is reviewed for abuse of discretion.  *See id.*

## V.    STATEMENT OF THE CASE

### A.    The Dispute between HCMLP and the Redeemer Committee over the Joint Plan and Scheme Leads to Arbitration and HCMLP's Bankruptcy

1.      Debtor HCMLP was the investment manager of the Highland Crusader Fund (the "Crusader Fund"), a master fund created between 2000 and 2002 by pooling together Highland Crusader Fund, L.P. and Highland Crusader Fund II, Ltd. ROA 002462-63.  In the midst of the 2008 financial crisis, HCMLP was flooded with redemption requests from Crusader Fund investors, and on October 15, 2008, HCMLP placed the Crusader Fund in wind-down. ROA 002463.  After HCMLP failed to pay some of the redemptions, litigation against HCMLP was commenced, and the Supreme Court of Bermuda ultimately approved the adoption of the *Joint Plan of Distribution of the Crusader Fund* and the *Scheme of Arrangement* (the "Joint Plan and Scheme") among the Crusader Fund and its former investors, which became effective in August 2011. ROA 002463-64, 2685.  A committee of investors

who had redeemed their interests in the Crusader Fund (the "Redeemer Committee")
was elected from among Crusader Fund investors to oversee HCMLP's management
of the Crusader Fund. ROA 002464.

2.     After disputes arose between the Redeemer Committee and HCMLP,
on July 5, 2016, the Redeemer Committee (i) terminated and replaced HCMLP as
investment manager of the Crusader Fund, and (ii) commenced an arbitration against
HCMLP (the "Arbitration"). ROA 002465.

3.     In September 2018, HCMLP and the Redeemer Committee participated
in a multi-day evidentiary hearing, after which the arbitration panel (the "Panel")
issued a partial final award in March 2019 and a final award in April 2019 (together,
the "Arbitration Award"), finding in favor of the Redeemer Committee on a variety
of claims and assessing damages of approximately $189 million against HCMLP.
ROA 002686.

4.     The Panel found that, among other things, HCMLP had purchased the
redemption claims of former Crusader Fund investors (the "Redeemed Interests") in
violation of the Joint Plan and Scheme. ROA 002485-92.  Notably, the remedy
selected by the Panel was rescission, *i.e.*, HCMLP would transfer the improperly
purchased claims to the Redeemer Committee and disgorge any profits it made on
the transaction, plus 9% interest. ROA 002492.

5.     The Redeemer Committee set a hearing in Delaware Chancery Court for October 8, 2019, in order to obtain entry of a judgment with respect to the Arbitration Award.  That hearing was subsequently continued to October 16, 2019. ROA 002686.  On the morning of October 16, 2019, HCMLP filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, halting the enforcement action. ROA 003621.

**B.     CLO Holdco Files First Proof of Claim Based on Participation and Tracking Interests**

6.     The Bankruptcy Court established April 8, 2020 as the general bar date for filing proofs of claim (the "Bar Date"). ROA 002731.  On the Bar Date, CLO Holdco filed a general unsecured, non-priority claim in the approximate amount of $11.34 million, denoted as Claim No. 133 (the "Original Claim"). ROA 002142-44. In the Original Claim, CLO Holdco alleged that it had purchased participation and tracking interests in the Redeemed Interests held by HCMLP (the "Tracking & Participation Interests").  The Tracking & Participation Interests, by their terms, have value only to the extent that the Redeemed Interests have value.[2]

---

[2]  *See* ROA 002176-77 ("HCMLP shall promptly pay to the holder of the [Tracking & Participation Interest] an amount equal to such holder's share of each amount received and applied by HCMLP … in payment of distributions, Plan Claims … and proceeds of any sale, assignment or other disposition of any interest in each case, with respect to or in the [Tracking & Participation Interest]."

4

7.     CLO Holdco's rights with respect to the Tracking & Participation Interests are therefore wholly contingent on the value of the Redeemed Interests. The Tracking & Participation Interests are also without recourse to HCMLP, and HCMLP made no representations or warranties about the value or legality of the Redeemed Interests.[3]

## C.     The Settlement Between HCMLP and Redeemer Committee Rendered CLO Holdco's Tracking & Participation Interests Worthless and Prompted CLO Holdco to Amend The Amount of Its Proof of Claim to Zero Dollars

8.     On April 3, 2020, the Redeemer Committee filed its own general unsecured claim in the amount of $190.82 million (ROA 000921-30), and on April 6, 2020, the Crusader Funds filed a general unsecured claim in the amount of $23.48 million (ROA 000932-43) which sought, *inter alia*, disgorgement of all management, distribution, and deferred fees paid to HCMLP based on the "faithless servant" doctrine.

9.     After lengthy negotiations, HCMLP entered into a settlement agreement with the Redeemer Committee and the Crusader Funds (the "Settlement

---

[3]  *See* ROA 002177 ("The [Tracking & Participation Interests] are held by the holder thereof without recourse to HCMLP … and for such holder's own account and risk.  HCMLP makes no representation or warranty as to, and shall have no responsibility for the value … validity … or enforceability of the [Redeemed Interests] or any of the rights attaching to them; any representation or warranty made by, or the accuracy, completeness, correctness or sufficiency of any information ... .")

Agreement"). ROA 000824-72.   The Settlement Agreement provided for the allowance of the Redeemer Committee's approximately $190 million claim and the Crusader Funds' approximately $24 million claim in the amounts of $136.7 million and $50,000, respectively. ROA 000856-57.

10.     The Settlement Agreement, which is the operative governing document because the prior Arbitration Award was never confirmed by any court or reduced to a judgment, is binding on HCMLP.  The Settlement Agreement expressly provides for *cancellation* of the Redeemed Interests, which the Panel had concluded HCMLP acquired in violation of the Joint Plan and Scheme.  The Settlement Agreement does not provide that HCMLP receives any "credits" or "offsets" on account of the purchase price of Redeemed Interests (*i.e.*, the sole basis for CLO Holdco's newly articulated damages theory).[4]  The Settlement Agreement resolved myriad additional issues, including: (1) HCMLP's appeal of the Arbitration Award; (2) the Crusader Funds' proof of claim; (3) a separate proceeding that HCMLP filed in Bermuda; and

---

[4]   *See* ROA 000857 ("The Debtor and Eames each consent to the Crusader Funds, on or after the date an order of the Bankruptcy Court approving this Stipulation … becomes a final and non-appealable order (the 'Stipulation Effective Date'), cancelling or extinguishing all of the limited partnership interests and shares in the Crusader Funds held by each of them respectively (collectively, the 'Cancelled Highland and Eames Interests'), as provided for in the Arbitration Award.  Each of the Debtor and Eames represents solely for itself that (a) it has the authority to consent to the cancellation or extinguishment of the Cancelled Highland and Eames Interests that it holds, and (b) upon the occurrence of the Stipulation Effective Date, no other actions by or on behalf of it are necessary for such cancellation or extinguishment.").

(4) HCMLP's rights to future distributions in connection with the liquidation of the Crusader Funds. ROA 000830-33.

11.     On September 23, 2020, HCMLP filed a motion to approve the Settlement Agreement (the "Settlement Motion") in the Bankruptcy Court. ROA 000824.[5]  On October 21, 2020, the Bankruptcy Court held oral argument on the Settlement Motion (ROA 000944), and on October 23, 2020, the Bankruptcy Court entered an order approving the Settlement Agreement.  *See* ROA 1200 (the "Settlement Order").[6]

12.     Consistent with the terms of the Settlement Agreement, the Redeemed Interests were cancelled by the Crusader Fund.  The Tracking & Participation Interests, which track the value of the now-cancelled Redeemed Interests, *see* ROA 001268-80, were thereby rendered valueless.

13.     CLO Holdco's counsel recognized that the cancellation of the Redeemed Interests rendered CLO Holdco's Tracking & Participation Interests

---

[5]   CLO Holdco was served with notice of the Settlement Motion and Settlement Agreement. *See* ROA 000486-87 [Bankruptcy Docket No. 1113], Certificate of Service, Ex. A at 2.

[6]   Interested Parties UBS AG London Branch and UBS Securities LLC appealed the Settlement Order on November 6, 2020 (ROA 000519 [Bankruptcy Docket No. 1339]), but no stay pending appeal was sought or granted and the appeal has since been consensually resolved.  *See* ROA 003626 (Electronic Order, *UBS Securities LLC et al. v. Highland Capital Management LP*, Case No. 3:20-cv-03408-G at Docket No. 40 (N.D. Tex. 2020) ("Upon consideration of the parties' stipulation of voluntary dismissal, it is ORDERED that this case is DISMISSED WITH PREJUDICE.")).

worthless, thus negating the Original Claim.  On September 1, 2020, counsel for CLO Holdco emailed HCMLP's counsel, representing that CLO Holdco will "agree to waive our claims against [HCMLP] pursuant to the Crusader participation interests in our proof of claim."  ROA 001283.  HCMLP expressly relied on CLO Holdco's agreement and even referred to it in the Settlement Motion. *See* ROA 000843 ("Another collateral benefit of the [Settlement Agreement] is that CLO Holdco, Ltd. … has agreed to withdraw its general unsecured claim in the amount of $11,340,751.26.  *See* Claim No. 133.  CLO Holdco's claim was based on 'participation and tracking interests' in the Crusader Funds that were held by the Debtor.").

14.     Consistent with that agreement between counsel, following the Court's approval of the Settlement Agreement, on October 21, 2020, CLO Holdco's counsel informed HCMLP's counsel that he would file "an executed claim amendment from my client [CLO Holdco] that reduces [CLO Holdco's Original Claim] to $0." ROA 001285.

15.     And that is exactly what CLO Holdco did.  On October 21, 2020, CLO Holdco filed an amended proof of claim (the "Amended Proof of Claim").  In recognition of the fact that the Original Claim was rendered worthless by the

Settlement Agreement, the Amended Proof of Claim seeks zero dollars from HCMLP.[7] ROA 001372-73.

16.    HCMLP's Fifth Amended Plan of Reorganization was confirmed by the Bankruptcy Court on February 22, 2021. ROA 001541.

### D.    CLO Holdco Acknowledges That Amending Its Proof of Claim to Zero Dollars Was Equivalent to Withdrawing the Claim

17.    On December 17, 2020, the Official Committee of Unsecured Creditors (the "Committee") filed an adversary proceeding against CLO Holdco seeking to avoid transactions and recover funds on theories of fraudulent transfer, alter ego, money had and received, and conspiracy. ROA 000408, 436-38, 441, 556 [Bankruptcy Docket Nos. 590, 793, 802, 825, 1594].  On August 11, 2021, when the HCMLP's plan of reorganization went effective (ROA 001541-42), the Trustee succeeded the Committee in pursuing those claims as plaintiff in the adversary proceeding.  ROA 003572.

18.    Later that month, at an August 28, 2021 procedural hearing regarding that adversary proceeding, the Bankruptcy Court asked the parties if CLO Holdco had any pending proofs of claim against HCMLP.  ROA 003579-80.  Counsel for

---

[7]  CLO Holdco's Proposed Second Amended Proof of Claim (as hereinafter defined) that is at issue on this appeal is not based on any facts or information that were not available to CLO Holdco at the time that it filed its first Amended Proof of Claim. To the contrary, at the time CLO Holdco filed the first Amended Proof of Claim, it had access to the same information and facts that it does today.

the Trustee advised the court of CLO Holdco's pending proof of claim. ROA 003580. Louis Phillips, counsel for CLO Holdco (who remains counsel for CLO Holdco through today, including on this appeal), disputed that assertion:

> That is not correct, Your Honor. **There is no pending proofs of claim. The only proof of claim on file is for zero amount on behalf of CLO Holdco because the very interests that the complaint complains about having been transferred to ultimately CLO Holdco were canceled; therefore, of no value.** And CLO Holdco had previously had a proof of claim on file, but amended that proof of claim to reflect a zero amount.[8]

ROA 003580 (emphasis added).

19. At the same hearing, counsel for CLO Holdco further explained that the zero-dollar proof of claim could be withdrawn because, as a result of the Redeemer Settlement, CLO Holdco had no claim:

> Well, I can withdraw it. It was done before I got -- I became counsel here. And it was done to -- on the basis of a resolution of issues regarding the Crusader Redeemer litigation and -- and because the ultimate result was that the basis for the proof of claim was extinguished, the proof of claim was either amended -- it was amended to reflect a zero amount. **And I can certainly withdraw it because it is a zero amount**. These Defendants -- these two Defendants have no claims pending that would require action by the Court…

_____

[8]  The hearing was on a motion to stay the adversary proceeding to provide the Trustee with time to investigate and consolidate the claims against CLO Holdco with the claims against other entities and individuals. The Bankruptcy Court inquired at the hearing whether there were any pending proofs of claim because, at that time, CLO Holdco already had made a motion to withdraw the reference. ROA 003579-80. Because a pending proof of claim would be a factor disfavoring withdrawal of the reference, CLO Holdco's counsel fervently made the correct statement that CLO Holdco's zero-dollar proof of claim was equivalent to no claim at all.

ROA 003480-81 (emphasis added).   Mr. Phillips took the position before the Bankruptcy Court that CLO Holdco's proof of claim was properly reduced to zero dollars as a result of the Redeemer Settlement, and that a zero-dollar claim was effectively meaningless and could be withdrawn.

### E.   CLO Holdco Files the Purported Second Amendment to its Proof of Claim

20.   On October 15, 2021, the Trustee filed his adversary proceeding complaint against James Dondero and certain entities he owns or controls, including CLO Holdco.   Among myriad other relief, the Trustee's complaint sought the disallowance of CLO Holdco's pending zero-dollar proof of claim, which was necessary solely to clean up the docket. ROA 000735 [Bankruptcy Docket No. 2934]; ROA 001247.

21.   On November 9, 2021, the Trustee filed *The Litigation Trustee's Omnibus Objection to Certain Amended and Superseded Claims and Zero Dollar Claims* (the "Objection") (ROA 001202) seeking disallowance of selected claims, including the Amended Proof of Claim.   As the Objection explained, the zero-dollar Amended Proof of Claim filed by CLO Holdco, which CLO Holdco's counsel had conceded was equivalent to no claim at all, should be expunged.   ROA 001208.

22.   Two months later, on January 11, 2022, CLO Holdco filed a further amended proof of claim (the "Proposed Second Amended Proof of Claim"), ROA 002283, that purported to increase the amount of damages sought from zero dollars

to "[u]pon information and belief … at least $3,788,932." ROA 002297. CLO Holdco did not first seek leave from the Bankruptcy Court to file the post-Bar Date proof of claim. Instead, CLO Holdco filed the Proposed Second Amended Proof of Claim concurrently with the Motion, which seeks to "ratify" the Proposed Second Amended Proof of Claim.

23.   Finally faced with a motion to expunge its zero-dollar proof of claim, rather than simply withdraw the claim—as CLO Holdco previously said it would do, and as the Trustee reasonably expected it would do—CLO Holdco instead conjured a purportedly "new theory" (albeit a frivolous one) in violation of its prior agreement to waive the claim. As described by the Bankruptcy Court, CLO Holdco was attempting a "whipsaw," ROA 000041, that is, an undoing of own recognition that its claim had no value. The purportedly "new" theory underlying CLO Holdco's Proposed Second Amended Proof of Claim has two prongs. *First*, CLO Holdco contends that, as holder of the Tracking & Participation Interests, it has a contractual right to receive payments from HCMLP on account of "the proceeds of any sale, assignment, or other disposition of any interest with respect to" the Redeemed Interests. ROA 001448. *Second*, CLO Holdco contends that, pursuant to the Arbitration Award, the damages HCMLP was ordered to pay were "net of the price paid by HCMLP for the [Redeemed Interests], meaning that HCMLP received a credit against the damages award by virtue of the transfer or extinguishment of the

[Redeemed Interests]."  ROA 001450.  According to CLO Holdco, as the holder of the Tracking & Participation Interests, it is entitled to a cash payment on account of the "credit" HCMLP purportedly received under the Arbitration Award, even though HCMLP never received a "credit" – or anything else – on account of the Redeemed Interests.

24.    The Trustee filed his opposition to the Motion on February 1, 2022, urging the Bankruptcy Court to use its discretion to reject the amendment and expunge the zero-dollar proof of claim, on the grounds that (i) no compelling circumstances existed to allow this post-confirmation alteration, (ii) CLO Holdco's new theory was frivolous because HCMLP never received any proceeds on account of the Redeemed Interests, and (iii) the Debtor would be prejudiced by the expense of litigating a frivolous proof of claim. ROA 001237-85.  CLO Holdco replied on February 8, 2022. ROA 001286.

### F.    The Bankruptcy Court's Ruling

25.    On August 4, 2022, the Bankruptcy Court held a hearing on the Motion. ROA 000012.  At the conclusion of the hearing, the Bankruptcy Court denied the Motion, ruling that the Proposed Second Amended Proof of Claim would "not be allowed as a viable proof of claim," and that the extant Amended Proof of Claim should be expunged.   ROA 000074.   The Bankruptcy Court noted that CLO Holdco's delay in amending a second time, its inconsistent "whipsawing" in

13

positions before the court, the specter of waiver or estoppel, the perception of gamesmanship, and the futility of its theory as a basis for amendment, with corresponding prejudice to the Debtor in having to litigate that frivolous Second Amended Proof of Claim, were all reasons for the Bankruptcy Court to use its discretion to deny the Motion and expunge the proof of claim. ROA 000074-77.

26.     The Bankruptcy Court entered the Order, consistent with its oral ruling and reasoning, on August 17, 2021.  CLO Holdco filed its notice of appeal on August 31, 2021. ROA 000077-80, 000006, 000003.

## VI.   SUMMARY OF ARGUMENT

27.     In determining whether to allow an untimely amended proof of claim, the legal standard in the Fifth Circuit is clear: the decision is within the court's discretion.  *See In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991) ("Whether the court abused its discretion is the . . . question before us . . . ."); *In re Dortch*, 2009 WL 6764538, at *2 (Bankr. N.D. Tex. Dec. 1, 2009) ("[A]llowing amendment of the claim at this stage of the case is within the court's sound discretion.").

28.     The Bankruptcy Court's Order denying CLO Holdco's Motion, thereby denying CLO Holdco's attempt to amend its proof of claim for the second time, was based upon several considerations.

29.     *First*, the Bankruptcy Court found that CLO Holdco's delay in seeking to file the Proposed Second Amended Proof of Claim was "very, very significant."

14

ROA 000075.  Indeed, CLO Holdco's attempt to amend its Original Proof of Claim, for the second time, came nearly one-and-a-half years after the Bar Date, one year after the Debtor's Plan was confirmed, and six months after the Plan went effective. ROA 002670.

30.    ***Second***, "another fact weighing heavy on the [Bankruptcy] Court's mind in exercising its discretion" was that CLO Holdco's counsel had previously taken the position, both to the Bankruptcy Court itself on the record and in correspondence with the Trustee's counsel, that it had "zero" claims against the Debtor's estate and offered to withdraw the proof of claim if necessary.  ROA 000076.  CLO Holdco's action of amending its Original Proof of Claim to zero rather than withdrawing it, notwithstanding these representations, bore the taint of "gamesmanship." ROA 000077.

31.    ***Third***, allowing CLO Holdco to further amend its proof of claim would be an "exercise in futility," because the Proposed Second Amended Proof of Claim was based upon a "frivolous" argument. ROA 000077.

32.    ***Finally***, the Bankruptcy Court found that the estate would be prejudiced if it were forced to litigate "a frivolous theory so late in the case." ROA 000077.

33.    Nevertheless, CLO Holdco argues that the Order should be vacated because, CLO Holdco contends, the Bankruptcy Court failed to apply the "dual

considerations" for determining whether to permit a post-bar date amendment to a proof of claim set forth by the Fifth Circuit in *Kolstad*. This argument fails for multiple reasons.

34.     First and foremost, the Bankruptcy Court did in fact consider and follow *Kolstad*. The Bankruptcy Court also correctly recognized that *Kolstad* is "factually somewhat different," and thus the Bankruptcy Court properly considered cases with more analogous factual circumstances—particularly, cases addressing *post-confirmation* amendments. ROA 002634, 2639, 2664, 2669-71. Those cases do not conflict with *Kolstad*, and thus, the Bankruptcy Court committed no error in considering them along with *Kolstad* in exercising its discretion.

35.     In any event, the Bankruptcy Court answered both "general questions" posited in *Kolstad*—whether the Debtor or its creditors "could have been surprised" by the amendment, and whether prejudice was caused by the delay—in the affirmative.

36.     The Order denying the Motion was a proper exercise of the Bankruptcy Court's discretion and should be affirmed.

## VII.  <u>ARGUMENT</u>

37.     CLO Holdco's appeal is predicated on a mischaracterization of the Bankruptcy Court's decision and a misapprehension of the Fifth Circuit's *Kolstad* decision. In *Kolstad*, the original claim was filed by the debtor on behalf of the IRS,

not by the IRS itself as a claimant.[9]  928 F.2d at 172.  Prior to the hearing to confirm

the proposed plan of reorganization, the IRS sought to amend the proof of claim to

increase, and thereby to correct, the amount of tax owed.  *Id.*  The Fifth Circuit found

that the bankruptcy court did not abuse its discretion by authorizing the IRS to amend

the debtor-filed proof of claim.  *Id.* at 175.  The claim was not a "new" claim, and

"neither the creditors nor [the debtor] could have been surprised by the amendment

because [the debtor] originally listed the tax debt as 'disputed' and was negotiating

with [the] IRS about its amount . . ."  *Id.* at 175-76.  The Fifth Circuit, in affirming

the bankruptcy judge's decision allowing the amendment, did note that it was

"troubled that [the] IRS delayed filing its amended claim until virtually the eve of

the confirmation hearing . . . [but] assume[d] that the able bankruptcy judge balanced

this factor against others weighing in favor of the amendment."  *Id.* at 176.

38.     Here, the Bankruptcy Court did not refuse to apply *Kolstad*; to the

contrary, the Bankruptcy Court cited, considered, and relied upon *Kolstad* while also

considering decisions in other cases with more analogous factual circumstances.

ROA 002634, 2639, 2664, 2669-71.   And all of the cases considered by the

---

[9]   The debtor in *Kolstad* filed the claim on the IRS's behalf because the tax claim
was non-dischargeable.  If no claim was filed on the IRS's behalf, "the debtor
would remain burdened by that debt following bankruptcy," a shortcoming that
could prevent the debtor from establishing that his proposed plan was feasible, as
is required under section 1129(a)(11) of the Bankruptcy Code.  *Kolstad*, 928 F.2d
at 174.

Bankruptcy Court, including *Kolstad*, clearly establish that it is within the court's discretion whether to allow untimely amended proofs of claim.  *See, e.g.*, *Kolstad*, 928 F.2d at 175; *Dortch*, 2009 WL 6764538 at *2.  CLO Holdco's contention that the additional cases considered by the Bankruptcy Court are inconsistent with *Kolstad* is baseless.

### A. The Bankruptcy Court Did Not "Eschew" *Kolstad* When Exercising Its Discretion to Deny the Motion

39.   Contrary to CLO Holdco's assertion that the "Bankruptcy Court eschewed *Kolstad*," CLO Holdco Br. at 20, the Bankruptcy Court expressly considered *Kolstad*, finding it to be "indeed of relevance," ROA 002669, and recognizing that *Kolstad* mandates the application of "the Court's discretion," *see, e.g.*, ROA 002664.

40.   Given that the Bankruptcy Court did in fact consider *Kolstad* in reaching its decision and applied the very type of discretion permitted by the Fifth Circuit, the essence of CLO Holdco's remaining argument is that the other cases the Bankruptcy Court considered are so inconsistent with *Kolstad* that it was an abuse of discretion for the Bankruptcy Court to have consulted them at all.

41.   The other cases the Bankruptcy Court relied upon, however, are not inconsistent with *Kolstad*.  The *Kolstad* court listed, in a footnote, five factors considered by courts in ruling on amendments to IRS bankruptcy proofs of claim, including: (1) whether the parties relied upon the earlier proof of claim or whether

they had reason to know that later proofs of claim would follow; (2) whether other creditors would receive a windfall if the court disallowed the amendment; (3) whether the creditor intentionally or negligently delayed in filing the proof of claim; (4) the justification for the creditor's failure to request an extension; and (5) whether any other equitable consideration should be taken into account. *Kolstad*, 928 F.2d at 175 n.7. According to the court, these factors are "overlapping" and "subsume two general questions": (1) whether the creditor "is attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim that could not have been foreseen from the earlier claim or events," and (2) "the degree and incidence of prejudice, if any, caused by" the delay. *Id*.

42.     While the Fifth Circuit listed these factors and general questions that courts may consider when exercising their discretion in "ruling on amendments to IRS bankruptcy proofs of claim," it did ***not*** mandate the consideration of any specific factors or application of any specific test by courts determining whether to allow the IRS—or any other creditor—to amend previously filed proofs of claim. *Id*. Instead, the Fifth Circuit identified the "question before [it]" as whether the bankruptcy court abused its discretion in permitting the IRS to amend the proof of claim. *Id*. at 175. Upon consideration of the facts of the case (*i.e.*, the amended claim was the same type of employment tax liability as the original claim and the debtor listed the IRS's claim as "disputed"), as well as equitable considerations (*i.e.*, if the IRS's claim was

valid, allowing the amendment would not be unfair to other creditors, who "would have achieved an undeserved windfall from a denial of the amendment"), the Fifth Circuit concluded that the bankruptcy court had not abused its discretion. *Id.* at 175-76.

43.    The Bankruptcy Court in this case noted that the facts in *Kolstad* were entirely different than those here.  In particular:

a.  The original claim in *Kolstad* was ***filed by the debtor*** on the claimant's behalf, *id.* at 172, and thus the claimant was not involved in setting the amount included in that claim; here, in stark contrast, CLO Holdco filed both the original claim and the first amended claim, in which it chose to reduce its claim to zero (ROA 002142, 2213);

b.  There was no surprise to the parties in *Kolstad* from the amendment because the debtor filed the claim as disputed, *id.* at 176, whereas here, CLO Holdco's prior counsel expressly agreed "to waive [CLO Holdco's] claims against [HCMLP] pursuant to the Crusader participation interests in [CLO Holdco's] proof of claim," and its current counsel represented to the Bankruptcy Court that it could "certainly withdraw [the Amended Proof of Claim] because it is a zero amount" (ROA 003580-81); and

c. The claimant in *Kolstad* sought to amend the claim **prior to the confirmation hearing**, 928 F.2d at 176, whereas here, CLO Holdco's Proposed Second Amended Proof of Claim was filed ten months after the Debtor's Plan was confirmed (ROA 000075).

44.     Accordingly, far from rejecting *Kolstad*, the Bankruptcy Court considered these factual differences and looked to cases where similar equitable considerations existed for guidance in exercising its discretion.  For example, in both *Dortch* and *In re Winn-Dixie Stores, Inc.*, 639 F.3d 1053 (11th Cir. 2011), unlike in *Kolstad*, amendments were pursued post-confirmation.  In both cases, the courts found that after confirmation, "a showing of compelling circumstances in addition to the normal prerequisites to allowing amendment is required."  *See Dortch*, 2009 WL 6764538, at *1; *see also Winn-Dixie Stores*, 639 F.3d at 1056-57 ("[P]ost-confirmation amendment—while not prohibited—is not favored, and only the most compelling circumstances justify it.").

45.     Critically, neither *Dortch* nor *Winn-Dixie* is inconsistent with *Kolstad*'s pronouncement that "[a]mendments to timely creditor proofs of claim have been liberally permitted."  *Kolstad*, 928 F.2d at 175.  While "[l]eave to amend should be freely granted early in a case . . . passing milestones in the litigation make amendment less appropriate."  *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993).  "One milestone of particular significance in bankruptcy is the bar date," and

"[c]onfirmation of the plan of reorganization is a second milestone" after which "further changes should be allowed only for compelling reasons." *Id.*[10]  As CLO Holdco concedes, the concerns driving the compelling circumstances standard are "already addressed" in *Kolstad*, indicating that the standards are complementary rather than incompatible.  CLO Holdco Br. at 24 (conceding that the compelling circumstances "is redundant of considerations already incorporated into the *Kolstad* standard").

46.    Indeed, the Fifth Circuit in *Kolstad* explicitly noted that the timing of an amendment is a proper factor for consideration, stating that it was "troubled that [claimant] delayed filing its claim until virtually the eve of the confirmation hearing," but ultimately declining to find an abuse of the bankruptcy court's

---

[10]   As Judge Easterbrook explained in *Holstein*:

Confirmation automatically discharges all debts other than those provided for in the plan, 11 U.S.C. § 1141(d)(1)(A), and "each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." *In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3d Cir. 1992).  Modification of a confirmed and substantially consummated plan is forbidden except to the limited extent 11 U.S.C. § 1127 permits.  Post-confirmation amendments make an end run around these provisions and may throw monkey wrenches into the proceedings, making the plan infeasible or altering the distributions to remaining creditors.  Small claims may be conceded, while larger ones may be contested (by other creditors, if not by the debtor).  *And whether or not late-breaking claims affect third parties' entitlements, they assuredly disrupt the orderly process of adjudication. To every thing there is a season, and the season for stating the amount of a debt is before the confirmation of a plan of reorganization.*

*Id.* at 1270–71 (emphasis added).

discretion due to its assumption that "the able bankruptcy judge balanced this factor against others weighing in favor of the amendment." *Kolstad*, 928 F.2d at 176. Here, the Bankruptcy Court found that CLO Holdco's "very, very significant" delay in filing the Proposed Second Amended Proof of Claim was one of several factors weighing against the amendment. ROA 000075. And, of course, the "very significant delay" here was *far* longer—and after multiple additional milestones (including both plan confirmation and consummation)—than the delay that "troubled" the court in *Koldstad*.[11]

---

[11] None of the cases involving post-confirmation amendment cited by CLO Holdco requires a different result. For example, *In re Ben Franklin Hotel Associates*, 186 F.3d 301, 304-05, 309 (3d Cir. 1991), did not even involve amendment of a proof of claim. There, the claimant amended a state court complaint against the debtor after the automatic stay was lifted, and the court expressly noted that allowability of any money judgment obtained in that action would be a matter for the bankruptcy court. In *In re Knowles*, the debtor claimed, improperly, that the bankruptcy court had *no discretion* to allow an amended proof of claim post-confirmation. 1999 WL 718654, at *1 (N.D. Tex. Sept. 14, 1999). Here, the Trustee recognizes that the Bankruptcy Court had discretion to permit the amendment—as the Bankruptcy Court itself recognized—but declined to exercise its discretion in light of the facts. In *In re Goodman*, the IRS amended a previously incorrect claim for tax liability, which liability the debtor had previously reported as due on his own tax return, suggesting that the "amount of [the IRS's] amended claim comes to him as no surprise." 261 B.R. 415, 418 (Bankr. N.D. Tex. 2001). Finally, in *U.S. v. Johnston*, the IRS was permitted to amend its claim post-confirmation from unsecured to secured debt because the debtor failed to disclose her ownership of property on certain bankruptcy schedules, and the court found that "any prejudice [the debtor] might suffer from the IRS's amendment is attributable to her failure to adequately schedule her interest in the [property] in the first place." 267 B.R. 717, 722 (N.D. Tex. 2001). No such considerations are present here.

47.     Accordingly, neither *Dortch* nor *Winn-Dixie* is incompatible with *Kolstad*, and the Bankruptcy Court was well within its discretion to determine that there were no compelling reasons justifying CLO Holdco's delay, a decision made all the more appropriate in light of CLO Holdco's gamesmanship and the passing of significant and relevant milestones.

### B.     The Bankruptcy Court's Reasoning Necessarily Satisfies the Two Questions Laid Out in *Kolstad*

48.     Even if *Dortch* and *Winn-Dixie* are irreconcilable with *Kolstad*—which they plainly are not—the Bankruptcy Court committed no error because the two "general questions" posited by the Fifth Circuit—whether the creditor is filing a "new claim that could not have been foreseen from the earlier claim or events" and "the degree and incidence of prejudice, if any, caused by" the delay—necessarily overlap with and subsume the standards set forth in *Dortch* and *Winn-Dixie*, and amply support the Bankruptcy Court's decision.  *Kolstad*, 928 F.2d at 175 n.7.

### 1.     The Bankruptcy Court Did Not Abuse Its Discretion in Denying the Motion Where the Proposed Second Amended Proof of Claim Could Not Have Been Foreseen by HCMLP or Its Creditors

49.     The Bankruptcy Court appropriately likened the iterations of CLO Holdco's proofs of claim to a "whipsaw."  ROA 000041, 76. The Original Proof of Claim, filed on the April 8, 2020 Bar Date, asserted an approximately $11 million claim.  More than six months later, CLO Holdco's counsel "agree[d] to waive our

claims against [HCMLP] pursuant to the Crusader participation interests in our proof of claim," and filed an amended Proof of Claim that listed the claim amount at $0. And then, nearly a year later, after representing to the Bankruptcy Court that its claim was amended to zero because it was worthless and could simply be withdrawn, CLO Holdco sought to file the Proposed Second Amended Proof of Claim in the amount of approximately $3 to $5 million.  ROA 000076.

50.     The Bankruptcy Court considered this chain of events when it declined to "exercise its discretion" to reward CLO Holdco's "gamesmanship."[12]  ROA 000076.  CLO Holdco attempts to sidestep the Bankruptcy Court's reasoning in this regard by arguing that the Bankruptcy Court erroneously relied on the doctrines of waiver or estoppel.  But this misstates the record—the Bankruptcy Court expressly did not rely on either waiver or estoppel.  ROA 000074-77.[13]

---

[12]  The Bankruptcy Court's reference to "gamesmanship" was well-founded.  When it was beneficial to CLO Holdco to argue it had no proof of claim, it argued it had no claim.  Thus, CLO Holdco argued to the Bankruptcy Court that it had no claim because it recognized that its assertion of claims against the Debtor, HCMLP, would factor against CLO Holdco's motion to withdraw the reference.  That argument carried weight because CLO Holdco had, of course, reduced its claim to zero in recognition that the claim originally asserted lacked any value. ROA 003579-81.  Now that CLO Holdco perceives a benefit in having a proof of claim, it has taken a 180-degree turn and reversed its prior assertion.

[13]  "In exercising my discretion here, the timing matters greatly. The timeline matters greatly… And it's not just the post-confirmation timing… But the timing here, the delay, is all very significant, and it's more than just we're at a post-confirmation point in time. ***In further exercising my discretion***… [the whipsaw] is another fact weighing heavily on the [Bankruptcy] Court's mind in exercising its

51.     Additionally, CLO Holdco's attempts to shirk responsibility for its own decision in October 2020 to amend its proof of claim to zero cannot undo the "whipsaw" effect of its attempted serial amendments.[14]

52.     First, CLO Holdco attempts to render its filing of the zero dollar amended proof of claim meaningless by asserting that that it "consistently reserved the right to amend its proof of claim."  CLO Holdco Br. at 10.  The mere inclusion of that boilerplate reservation—which was simply cut and paste from CLO Holdco's original proof of claim (*compare* ROA 002149 *with* ROA 002220)—did not give CLO Holdco free rein to engage in gamesmanship and recant its recognition that its claim lacked value. *See Winn-Dixie*, 639 F.3d at 1057 ("Appellants argue that their original claims contained language reserving the right to amend and supplement those claims.  But such language cannot, as a matter of law, be construed to protect in *perpetuity* appellants' right to amend their claims.  Such a construction of this language would truly render illusory all finality achieved by a reorganization plan.") (emphasis in original).

---

discretion. It feels darn close to waiver and estoppel, if not exactly precisely there." (emphasis added.)

[14]   In addition to the arguments noted just below, before the Bankruptcy Court, CLO Holdco also attempted to justify its reversal by claiming that "new" counsel was responsible for identifying a new theory of recovery.  ROA 001233-34. CLO Holdco has abandoned that argument here after the Trustee pointed out at oral argument that CLO Holdco's "supposedly-new counsel had been in place for CLO Holdco for a year" when CLO Holdco first filed the Proposed Second Amended Proof of Claim.  ROA 000056.

53.     Second, CLO Holdco suggests that it was merely relying on HCMLP when it amended its proof of claim to zero dollars.  CLO Holdco Br. at 29.  That assertion, were it even relevant, cannot withstand scrutiny.  CLO Holdco amended its claim in October 2020—nine months after the party with ultimate control of CLO Holdco, James Dondero, was removed from control of HCMLP, and even after Dondero was required to resign.[15]  ROA 002219, 2657, 2961, 2967, 3609.  Thus there was no question that in October 2020, when CLO Holdco's claim was amended to zero dollars, there was adversity between HCMLP and CLO Holdco.  Indeed, correspondence between counsel to CLO Holdco and counsel to HCMLP at the time of that amendment demonstrates that the amendment resulted from an arm's length discussion between opposing counsel.  ROA 003389-92.  And, perhaps most significantly, the general partner of CLO Holdco's parent—*not* HCMLP—had ultimate decision-making authority over investments: "ALL ULTIMATE INVESTMENT DECISIONS WITH RESPECT TO THE FUNDS AND ITS

---

[15]   Pursuant to certain Advisory and Service Agreements, HCMLP was the investment advisor for CLO Holdco and its parent company, Charitable DAF Fund, L.P., from January 1, 2012, until HCMLP terminated the agreements effective January 31, 2021, with notice given November 30, 2020. ROA 002346, 002358, 002385, 002387.  Relations between CLO Holdco and HCMLP, however, had soured long before termination of the advisory agreements, particularly because James Dondero—the driving force behind HCMLP and CLO Holdco alike—was removed from control of HCMLP in January of 2020.  ROA 002657, 001282-85.

SUBSIDIARIES SHALL AT ALL TIMES REST SOLELY WITH THE GENERAL PARTNER."  ROA 001518 (emphasis in original).

54.    CLO Holdco's contention that it reduced its claim to $0 based solely statements by the Debtor, to which CLO Holdco was plainly adverse, cannot be credited.

### 2.    The Bankruptcy Court Did Not Abuse Its Discretion In Denying the Motion Where the Trustee and the Estate Would Be Prejudiced by Being Forced to Litigate A Frivolous Claim

55.    The Bankruptcy Court's denial of the Motion was also expressly premised upon its finding that "the estate would be prejudiced if it had to litigate this what I consider frivolous theory so late in the case."  ROA 000077.  CLO Holdco itself acknowledges that if the Proposed Second Amended Proof of Claim were in fact frivolous,  then forcing the Trustee to litigate the claim would result prejudice. ROA 000071.[16]

---

[16]   It cannot be seriously disputed that forcing the Trustee to litigate a frivolous amendment would waste both time and estate resources, to the detriment of the Debtor's valid creditors.  The cases cited by CLO Holdco for the proposition that attorney's fees are insufficient prejudice to preclude amendment are easily distinguishable. *See* CLO Holdco Br. at 25.  In *Crossland*, the defendant opposed amendment to a complaint not because it would have to expend more resources defending a frivolous claim, but because amendment would expose it to a claim for attorney's fees.  *Crossland v. Canteen Corp.*, 711 F.2d 714, 729 (5th Cir. 1983). And in *Aguirre*, which also did not involve a proof of claim but rather a district court complaint, the defendant opposed amendment of the complaint solely because attorney's fees would be expended preparing a new answer; defendant did not argue the amendment was frivolous or that the plaintiff was attempting to

56.    And that is exactly what the Bankruptcy Court found. The Bankruptcy Court concluded that allowing the amendment would be an "exercise in futility," as the Proposed Second Amended Proof of Claim was based upon a "frivolous" theory. The Bankruptcy Court "read the exhibits, read the documents" and concluded that "the Debtor's interest in the Crusader Funds was canceled as part of the [Settlement Agreement], and that means CLO Holdco's participation and tracking interests were canceled."  ROA 000077.

57.    The Bankruptcy Court's finding is sound.  *First*, CLO Holdco's Tracking & Participation Interests are tied to recoveries on HCMLP's Redeemed Interests, which HCMLP purchased in violation of the Joint Plan and Scheme, and thus were cancelled pursuant to the court-approved Redeemer Settlement.  Because the underlying Redeemed Interests have been cancelled, CLO Holdco's Tracking & Participation Interests in those claims have no value whatsoever.  ROA 000077. That is exactly what CLO Holdco recognized when it reduced its claim to zero, and remains the case today.

58.    *Second*, even giving effect to the damages calculation set forth in the Arbitration Award (which was superseded by the Redeemer Settlement), there were no proceeds to HCMLP from the Redeemed Interests and thus there was nothing to

---

assert a new claim where previously there was no claim.  *Aguirre v. S&B Eng'rs & Constructors LLC*, 2014 WL 12906440, at *1 (E.D. Tex. Sept. 22, 2014).

flow through to the Tracking & Participation Interests.  The Arbitration Award ordered HCMLP to *pay out* damages equal to any benefit it enjoyed from its ownership of the Redeemed Interests—i.e., any proceeds it took in, less what it paid for the interests in the first place.  As stated in the Partial Final Arbitration Award, HCMLP would have to pay "whatever financial benefits [HCMLP] received from the [transaction], less what [HCMLP] paid for the [Redeemed Interests.]"  ROA 002492.

59.    CLO Holdco warps this standard measure of damages in asserting that the amount HCMLP initially paid for the Redeemed Interests was a "credit" against the damages to be paid, and thus constitutes "proceeds" of the Redeemed Interests to HCMLP.  That argument is meritless:  HCMLP did not receive a dime as a result of the Redeemer Settlement, and would not have received a dime from enforcement of the Arbitration Award.  There is no basis, in law or fact, to suggest that an element used to determine the amount of *damages to be paid by HCMLP* resulted in *proceeds to HCMLP*.  *See* ROA 001225 (citing Participation and Tracking Interest Schedule, which provides that HCMLP shall pay CLO Holdco the "proceeds of any sale, assignment, or other disposition of any interest").   CLO Holdco's argument turns logic on its head. Thus the Bankruptcy Court soundly concluded that permitting the frivolous amendment would be futile, and that requiring HCMLP to defend against such an amended claim would result in prejudice to the estate.  ROA 000077.

## VIII.  <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, this Court should affirm the Order of the

Bankruptcy Court.

## IX.   <u>CERTIFICATE OF COMPLIANCE</u>

1) Pursuant to Bankruptcy Rule 8015(h), the signatory below certifies that this document complies with the word limit of Bankruptcy Rule 8015(a)(7)(B) because, excluding parts of the document exempted by Bankruptcy Rule 8015(g), this document contains 7,597 words; and,

2) This document complies with the typeface and typestyle requirements of Bankruptcy Rule 8015(a)(5-6) because it has been prepared in Microsoft Word using a proportionally-spaced typeface, Times New Roman, in size 14 font.


   /s/ *Robert S. Loigman*
Robert S. Loigman
December 5, 2022

Dated: December 5, 2022                    Respectfully submitted,
       Dallas, Texas

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
 /s/ *Robert S. Loigman*
Robert S. Loigman (admitted *pro hac vice*)
Deborah J. Newman (admitted *pro hac vice*)
Aaron Lawrence (admitted *pro hac vice*)
51 Madison Avenue
Floor 22
New York, NY 10010
Telephone:  (212) 849-7000

-and-

SIDLEY AUSTIN LLP
Paige Holden Montgomery
Juliana L. Hoffman
2021 McKinney Avenue
Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3300
Facsimile: (214) 981-3400

*Counsel for the Litigation Trustee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was sent via electronic mail via the Court's ECF system to parties authorized to receive electronic notice in this case on December 5, 2022.

*/s/ Aaron M. Lawrence*
Aaron M. Lawrence
