UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| In re: § | |
| HIGHLAND CAPITAL § | |
| MANAGEMENT, L.P., § | |
|  § | |
|   Debtor, § | |
| ─────────────────────────── § | |
| CLO HOLDCO, LTD., § | |
|  § | |
|   Appellant, § | |
|  § | |
| v. § | CIVIL ACTION NO. 3:22-CV-2051-B |
|  § | |
| MARC KIRSCHNER § | |
|  § | |
|   Appellee. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant CLO Holdco, Ltd.'s appeal from the bankruptcy court's Order Denying Motion to Ratify Second Amended Proof of Claim and Expunging Claim. R. 249.[1] Because the Court finds the bankruptcy court did not abuse its discretion in denying the amendment, the decision is **AFFIRMED,** and the appeal is **DISMISSED WITH PREJUDICE.**

I.

BACKGROUND

This appeal concerns the propriety of amending a proof of claim. In a motion to the bankruptcy court, CLO Holdco sought to amend its proof of claim following the confirmation of the debtor's reorganization plan. Following a hearing, the bankruptcy court denied the motion.

---

[1] For brevity, the Court will cite to the record singularly, since the appellant and appellee's submitted records are consecutively paginated. *See* Doc. 11, Appellant R., 1–2677; Doc. 12, Appellee R., 2678–3629.

The key question before the Court is whether the bankruptcy court abused its discretion in not permitting CLO Holdco's amendment.

A. *The Crusader Funds Wind Down and Arbitration Is Initiated Against Highland Capital*

In the early 2000s, Debtor Highland Capital Management, L.P. ("Highland Capital") served as the investment manager for the Highland Crusader Funds ("Crusader Funds"), which were formed by pooling together various sources of capital. R. 2462. The capital was primarily invested in "undervalued senior secured loans and other securities of financially troubled firms." R. 2463. During the 2008 financial crisis, however, the Crusader Funds became overwhelmed by redemption requests from investors as the Crusader Funds' assets simultaneously lost value. *Id.* Thus, in October 2008, Highland Capital placed the Crusader Funds in wind-down to liquidate assets and distribute the proceeds. *Id.*

Litigation soon commenced, however, following allegations of misconduct against Highland Capital and disputes over investor redemptions. *See id.* After several years of litigation, in 2011 the Supreme Court of Bermuda ultimately approved a "Joint Plan of Distribution of the Crusader Funds" and "Scheme of Arrangement" (together, the "Joint Plan and Scheme"), which was aimed at the "orderly management, sale, and distribution of the assets" of the Crusader Funds. R. 2462–63.  Under the Joint Plan and Scheme, Highland Capital continued to serve as the investment manager, but a committee of Crusader Funds investors who had redeemed their interests in the Crusader Funds (the "Redeemer Committee") was elected to oversee Highland Capital's management of the fund's liquidation and distribution. *See* R. 2464.

Eventually, disputes arose between the Redeemer Committee and Highland Capital, which, in 2016, culminated in the Redeemer Committee terminating Highland Capital as

investment manager and initiating arbitration proceedings against it. R. 2465. The Redeemer Committee alleged, among other things, that Highland Capital had breached its fiduciary duty and the Joint Plan and Scheme by purchasing the redemption claims of former Crusader Funds investors (the "Redemption Interests"). Doc. 13, Appellant Br., 8; *see* R. 2469.

In 2019, following a multi-day evidentiary hearing, the arbitration panel issued a final award, which found that Highland Capital had breached its fiduciary duty and the Joint Plan and Scheme by purchasing the Redemption Interests. R. 2491. The arbitration panel ordered "rescission," which required Highland Capital to transfer the Redemption Interests back to the Redeemer Committee and pay the committee "whatever financial benefits Highland [Capital] received from the . . . transactions, less what Highland [Capital] paid for the [Redemption Interests], plus interest at the rate of 9%." R. 2492.

In October 2019, a hearing was set in Delaware Chancery Court to confirm the arbitration award. *See* R. 2686. But on the morning of the hearing, Highland Capital filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, which halted the Delaware proceeding. *See* R. 326, 3621. Bankruptcy proceedings followed.

B.   *Various Entities File Proofs of Claim Against Highland Capital, Including CLO Holdco*

In early March 2020, the bankruptcy court issued an order setting April 8, 2020, as the general bar date for filing proofs of claim against Highland Capital. R. 2723. Relevant here, the Redeemer Committee filed a general unsecured claim for roughly $191 million, and the Crusader Funds filed a general unsecured claim for roughly $23.48 million. R. 921–43. Those entities' claims were based on the arbitration award or, alternatively, the disgorgement of all

management, distribution, and deferred fees paid to Highland Capital based on the "faithless servant" doctrine. R. 928–30, 939–40.

Most importantly for purposes of this appeal, CLO Holdco also filed a general unsecured claim for roughly $11.34 million based on "participation interests and tracking interests" it had acquired in "shares of certain funds." R. 2142, 2149. Specifically, CLO Holdco had acquired participation and tracking interests in the Redemption Interests held by Highland Capital (the "Participation and Tracking Interests"). *See* R. 2141; Doc. 13, Appellant Br., 6–7; Doc. 15, Appellee Br., 4. These Participation and Tracking Interests derived value from the underlying Redemption Interests. *See* R. 2176–77.[2]

C.  *Highland Capital Reaches a Settlement Agreement, CLO Holdco Amends Its Proof of Claim to Zero, and the Plan Is Confirmed*

In September 2020, Highland Capital, the Redeemer Committee, and the Crusader Funds reached a settlement agreement. R. 853–72. The settlement agreement provided that the Redeemer Committee's proof of claim would be allowed in the amount of $137.69 million, and the Crusaders Funds' proof of claim would be allowed in the amount of $50,000, both as general unsecured claims. R. 856–57. The settlement agreement further provided for the "cancelling or extinguishing" of the Redemption Interests held by Highland Capital. R. 857. The cancellation of these interests was intended to implement the arbitration panel's final award. *See id.*

Highland Capital filed a motion seeking the bankruptcy court's approval of the settlement agreement, and CLO Holdco was served with notice of the motion and agreement. *See* R.

---

[2] Specifically, Highland Capital had agreed to "promptly pay to the holder of the Participation Interest an amount equal to such holder's share of each amount received and applied by [Highland Capital] . . . . in payment of distributions, Plan Claims . . . and proceeds of any sale, assignment, or other disposition of any interest . . . with respect to . . . the Participating Shares." R. 2176–77.

486–87 (showing certificate of service). The bankruptcy court held a hearing on the motion and, on October 23, 2020, entered an order approving the settlement agreement. R. 1200–01.

Following the settlement agreement, CLO Holdco amended its claim against Highland Capital from $11.34 million to zero. R. 2220. In its filing, CLO Holdco indicated that, "[a]ccording to [Highland Capital], the termination of [Highland Capital]'s interests in [the Redemption Interests] served to cancel CLO [Holdco]'s participation interests in . . . those funds. Accordingly, CLO [Holdco]'s Claim Amount is reduced to $0.00." *Id.* (emphasis omitted).

On February 22, 2021, the bankruptcy court entered an order confirming Highland Capital's reorganization plan, and the plan took effect on August 11, 2021. R. 1541–42. When the plan went into effect, a Litigation Trustee took over investigating and monetizing causes of action on behalf of Highland Capital. *See* R. 3574. Part of those efforts included an adversary proceeding that was pending against CLO Holdco. *See* R. 3572, 3574. Later that August, in a hearing on the adversary proceeding, the bankruptcy court asked the parties if the defendants had any proofs of claim. R. 3579–80. Counsel for the Litigation Trustee indicated that one claim remained from CLO Holdco, but counsel for CLO Holdco quickly indicated that was "not correct." R. 3580. He stated that CLO Holdco had "no pending proofs of claim" because the underlying interests had been "canceled," and CLO Holdco's proof of claim had thus been "amended . . . to reflect a zero amount." *Id*. When the bankruptcy court asked why CLO Holdco's counsel did not simply withdraw the claim, he indicated he could "certainly withdraw it because it is a zero amount." R. 3580–81.

D.   *CLO Holdco Seeks to File Second Amended Proof of Claim*

In November 2021, the Litigation Trustee filed an objection to certain claims, including CLO Holdco's amended proof of claim for zero dollars. R. 1202. But on January 11, 2022, CLO Holdco filed a second amended proof of claim, which amended the previous zero-dollar claim to between $3.7 and $5.7 million. R. 2284, 2297. The second amended claim was based on a "new theory of recovery" relating to the same Tracking and Participation Interests previously in dispute. Doc. 13, Appellant Br., 16. That theory contended that Highland Capital had "received a credit against the damage award for the purchase price of the cancelled [Redemption Interests]," which constituted "proceeds of a disposition of the [Redemption Interests]." R. 2296. In other words, CLO Holdco contended this "credit" Highland Capital received from the Redemption Interests implicated the Tracking and Participation Interests and entitled CLO Holdco to payment in that amount. *Id.*

E.   *The Bankruptcy Court Denies the Motion*

CLO Holdco filed a Motion to Ratify the Second Amendment to Proof of Claim,[3] R. 1220–36, to which the Litigation Trustee objected, R. 1237–85. The bankruptcy court held a hearing on the motion on August 4, 2022. R. 12. After considering the parties' arguments, the bankruptcy court denied the motion. Ruling from the bench, the court first held that it had discretion to allow an amendment to the proof of claim based on the Fifth Circuit's *In re Kolstad* opinion. R. 74; *see In re Kolstad*, 928 F.2d 171, 172 (5th Cir. 1991).

---

[3] Despite the title of the motion, the parties seemingly agree—as indicated in the bankruptcy court's hearing and subsequent briefs on appeal—that the question is ultimately the permissibility of the amendment. *See* R. 22–23; *see also* Doc. 13, Appellant Br., 20 (basing argument on the Fifth Circuit's standard regarding "whether to allow an amendment").

But, exercising that discretion, the bankruptcy court found several circumstances weighed against such an amendment. The bankruptcy court first noted the timing of the amendment, emphasizing not only that it was post plan confirmation, but also that it came "one year and nine months after the bar date" and "ten months after confirmation." R. 75. The bankruptcy court further discussed what it termed the "whipsaw" of CLO Holdco's shifting amendments—from over $11 million, down to zero, and back to $3 million or more. R. 76. The court also noted the representations of CLO Holdco's counsel, who had stated previously that CLO Holdco did not have a proof of claim. *Id.* To the bankruptcy court, these representations suggested CLO Holdco had "stepped at least almost in the lane of waiver and estoppel." *Id.* The court similarly raised concerns of "gamesmanship" in not withdrawing the claim. R. 76–77. And finally, the court concluded that the amendment was ultimately premised on a frivolous theory that would cause Highland Capital prejudice to litigate. R. 77.

F.   *CLO Holdco Files the Present Appeal*

CLO Holdco filed the present appeal contesting the bankruptcy court's ruling. CLO Holdco argues, in short, that the bankruptcy court failed to apply *In re Kolstad* and instead imposed an improperly rigorous standard in determining whether to allow the amendment. *See* Doc. 13, Appellant Br., 2–3. Because the Court finds that the bankruptcy court properly considered and applied *In re Kolstad* and otherwise appropriately exercised its discretion, the bankruptcy court's decision is **AFFIRMED.**

## II.

## LEGAL STANDARD

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because the district court functions as an appellate court in this scenario, it applies the same standards of review that federal appellate courts use when reviewing district court decisions. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992). A bankruptcy court's decision to permit an amended proof of claim is reviewed for an abuse of discretion. *See In re Kolstad*, 928 F.2d at 173. A court abuses its discretion if its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 256 (5th Cir. 2020).

## III.

## ANALYSIS

The parties do not dispute that the bankruptcy court had the discretion to permit an amendment. *See* Doc. 13, Appellant Br., 2; Doc. 15, Appellee Br., 23 n.11. Rather, the primary issue on appeal is whether the bankruptcy court's decision was based on an erroneous legal standard or a clearly erroneous assessment of the evidence. *See Certain Underwriters*, 951 F.3d at 256.

A.   *The Bankruptcy Court Applied the Proper Legal Standard*

CLO Holdco contends the bankruptcy court "eschewed" *In re Kolstad*. Doc. 13, Appellant Br., 20. The Court disagrees. Rather, the bankruptcy court correctly considered *In re Kolstad* while also understanding its limitations.

In *In re Kolstad*, the debtor himself filed a claim on behalf of the Internal Revenue Service ("IRS") to bring his potential tax liability within the ambit of bankruptcy relief. 928 F.2d at 174. Otherwise, the debtor's tax liability was nondischargeable and could hinder a plan of reorganization with other creditors. *Id.* The question on appeal was whether the IRS could amend the proof of claim to a higher amount after the bar date had passed. *Id.* at 172. The Fifth Circuit held it could. *Id.* at 175. Placing a heavy emphasis on the purpose underlying each stage of bankruptcy, the court reasoned that "[a]mendments do not vitiate the role of bar dates." *Id.* Rather,

> while bar dates establish the universe of participants in the debtor's case, they have little correlation to the final relative amounts in which creditors will share any distribution. The goal of claims adjudication, on the other hand, is to assure that each creditor which is part of that universe ultimately participates in the voting and distribution from the estate in the proper amount determined by the priority and nature of its claim and bankruptcy's bargaining process.

*Id.* at 174 (emphasis omitted).

Consistent with bar dates' purpose of "establish[ing] the universe of participants in the debtor's case," the Fifth Circuit required that courts authorizing amendments "ensure that corrections or adjustments do not set forth wholly new grounds of liability." *Id.* at 175. And the court set out two considerations to guide that discretion: (1) whether the amending party "is attempting to stray beyond the perimeters of the original proof of claim and effectively file a 'new' claim" and (2) "the degree and incidence of prejudice" caused by the delay in amending. *Id.* at 175 & n.7. *In re Kolstad* therefore suggests that when a district court has discretion to permit an amendment to a proof of claim, the court should nonetheless exercise that discretion with due consideration for the current stage of the bankruptcy and any resulting prejudice to the other parties. *See id.*

The confirmation of a bankruptcy reorganization plan marks a significant stage in bankruptcy proceedings and is fundamentally different than the bar date. As the Seventh Circuit recognized, "One milestone of particular significance in bankruptcy is the bar date. . . . Confirmation of the plan of reorganization is a second milestone, equivalent to a final judgment in ordinary civil litigation." *Holstein v. Brill*, 987 F.2d 1268, 1270 (7th Cir. 1993); *see also Eubanks v. F.D.I.C.*, 977 F.2d 166, 170 (5th Cir. 1992) ("[A] plan of reorganization is given the same effect as a district court's judgment on the merits for claim preclusion purposes."). Accordingly, the Seventh Circuit noted that "passing milestones in the litigation make amendment less appropriate," and once the plan is confirmed, further amendments "should be allowed only for compelling reasons." *Holstein*, 987 F.2d at 1270.

CLO Holdco contends that the bankruptcy court erred by disregarding *In re Kolstad* in favor of *Holstein*'s "compelling reasons" standard. Doc. 13, Appellant Br., 18. First, CLO Holdco overstates the bankruptcy court's reliance on *Holstein*, as the bankruptcy court also considered factors beyond the post-confirmation posture in determining whether an amendment was appropriate. *See* R. 75–77 (discussing the overall delay, prior representations of counsel, concerns of gamesmanship, and futility of amendment).

In any event, the Court does not find *Holstein* and *In re Kolstad* incompatible. Instead, *Holstein* and *In re Kolstad* dovetail by recognizing that the stages of the bankruptcy proceeding must guide courts' discretion in permitting amendments. *See Holstein*, 987 F.2d at 1270; *In re Kolstad*, 928 F.2d at 175. *Holstein* applies this principle in the context of post-confirmation proceedings: Because plan confirmation functions much like a final judgment, courts should

exercise their discretion with that intended finality in mind. *See Holstein*, 987 F.2d at 1270–71; *see also Eubanks*, 977 F.2d at 170.

*In re Kolstad*, by contrast, provides two factors to guide courts' discretion in amendments after the bar date. Those factors are largely rooted in the purpose of that stage of the bankruptcy proceeding. *See, e.g.*, *In re Kolstad*, 928 F.2d at 174–75 & n.7 (providing the first factor, which seeks to prohibit a "new" claim from being filed, after discussing bar dates' purpose of establishing the universe of claims). Holdco's argument that *In re Kolstad*'s factors must be rigidly applied regardless of the underlying stage in the bankruptcy therefore proves too much. Accordingly, the bankruptcy court duly considered *In re Kolstad* but properly recognized that it is "factually somewhat different." R. 157.

Because the Court finds the proper legal standard was applied, it now considers whether the bankruptcy court's ruling was based on a clearly erroneous assessment of the evidence. The Court finds it was not.

B.  *The Bankruptcy Court's Assessment of the Circumstances Was Not Clearly Erroneous*

In denying the amendment, the bankruptcy court expressed concerns regarding the timing of the amendment, potential waiver or estoppel, gamesmanship, and the futility of amendment. The bankruptcy court's conclusions were well within its discretion.

In discussing the timing, the bankruptcy court recognized the significance of a post-confirmation amendment and agreed with other cases that the "circumstances ought to be compelling." R. 158. But it also noted more generally that "one year and nine months" had passed since the bar date and "ten months" since the confirmation, which constituted a significant delay. *Id.*

-11-

The bankruptcy court also noted that CLO Holdco's statements indicating it had no pending proof of claim and could withdraw its zero-dollar claim "stepped at least almost in the lane of waiver and estoppel . . . . if not . . . precisely there." R. 159. In its appeal, CLO Holdco contends that waiver and estoppel were not implicated because, among other things, the statements in the bankruptcy proceeding were not legal positions or made knowingly. Doc. 13, Appellant Br., 30–32. The Court need not address these arguments head-on, however, because the bankruptcy court expressly did not rely on those doctrines in its ruling. *See* R. 159. Rather, the bankruptcy court seemingly referenced the doctrines as shorthand for the prejudicial effect of CLO Holdco's shifting representations regarding its proof of claim. *See also* R. 124 (describing CLO Holdco's repeated amendments as a "whipsaw"). Put differently, the bankruptcy court did not need to find waiver or estoppel to properly recognize and consider the effects of CLO Holdco's changing statements. Similarly, the bankruptcy court expressed a concern of "gamesmanship" by CLO Holdco in amending the proof of claim versus simply withdrawing it. R. 159–60. Nothing in the record suggests that the bankruptcy court abused its discretion in coming to this conclusion.

And finally, the bankruptcy court noted that, based on various exhibits and documents, it "seem[ed] pretty clear . . . that [Highland Capital]'s interest in the Crusader Funds was canceled as part of the . . . settlement, and that mean[t] CLO Holdco's participation and tracking interests were canceled." R. 160. Thus, the bankruptcy court found, the debtor would be prejudiced if it had to litigate this "frivolous theory so late in the case." *Id.*

The record supports the bankruptcy court's finding.[4] CLO Holdco's "new theory" of recovery for the Tracking and Participation Interests, which is based on a "credit" received by Highland Capital, contradicts damages principles and the underlying arbitration award. Indeed, the settlement agreement between Highland Capital, the Crusader Funds, and the Redeemer Committee was intended to implement the final arbitration award. *See* R. 857 ("[Highland Capital] . . . consent[s] to the Crusader Funds . . . cancelling or extinguishing all of the limited partnership interests and shares in the Crusader Funds . . . as provided for in the Arbitration Award."). And the final arbitration award recognized, because the final award was "rescission," that the Redemption Interests could either be transferred back to the Redeemer Committee or extinguished. *See* R. 2548, 2550. In addition to the transfer or cancellation of these interests, the arbitration panel ordered the payment of any financial benefits Highland received from the transactions, "less what Highland [Capital] paid for the [Redemption Interests], plus interest at the rate of 9%." R. 2492.

CLO Holdco interprets the arbitration award—and in turn, the settlement agreement—as providing Highland Capital with a "credit" because the payment of damages subtracted "what Highland [Capital] paid for the [Redemption Interests]." *See id.* Accordingly, the argument goes, the credit Highland Capital received was an "other disposition of any interest," triggering the Tracking and Participation Interests. *See* R. 2296.

---

[4] CLO Holdco contends that the Court must apply a *de novo* standard of review when the bankruptcy court's denial of leave to amend was based on futility. Doc. 13, Appellant Br., 4. The Court disagrees. The case CLO Holdco cites in support indicates that the *de novo* standard of review applies only in cases where the "denial of leave to amend was based *solely* on futility." *See City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010) (emphasis added). Accordingly, the Court reviews the bankruptcy court's conclusion regarding futility for an abuse of discretion. *See id.*

The bankruptcy court did not abuse its discretion in deeming this theory frivolous. The settlement agreement expressly provided for the cancellation of the Redemption Interests, from which the Tracking and Participation Interests derived value. *See* R. 857, 2176–77. And, even assuming the settlement agreement incorporated the damages methodology from the arbitration agreement, Highland Capital received no actual value or "proceeds" from the Redemption Interests. Rather, the purported "credit" was instead a way of calculating Highland Capital's ill-gotten gains, a common damages remedy.

To borrow from the Litigation Trustee's example in argument to the bankruptcy court, if a director usurps a corporate opportunity, buying an asset for $1 million and later selling it for $5 million, his ill-gotten gains are $4 million. *See* R. 232–33. To say the director received $1 million in proceeds is incorrect. The director *paid* the $1 million, and the corporation is made whole by the profits it would have received from the corporate opportunity. *See id.* If the director had to pay $5 million to the corporation, the corporation would receive a $1 million windfall because it never paid for the initial opportunity.

Or take, for example, an individual that has wrongfully obtained $100 of stock in a corporation. A proper damages remedy for the corporation might be the transfer of the stock back to the corporation or the cancellation of the individual's interest. The individual may likewise have to pay back the dividends he received while he held that stock. But in no case has the individual received a $100 "credit." Indeed, requiring an additional payment of $100 would doubly punish the individual and doubly reward the corporation. Accordingly, the Court finds that the bankruptcy court did not abuse its discretion in determining Highland Capital would be prejudiced by having to litigate this frivolous theory "so late in the case." R. 160.

IV.

CONCLUSION

In sum, the Court finds that the bankruptcy court did not abuse its discretion in denying CLO Holdco's amendment to its proof of claim. Accordingly, the bankruptcy court's denial of CLO Holdco's Motion to Ratify is **AFFIRMED.** The appeal is **DISMISSED WITH PREJUDICE.**

SO ORDERED.

SIGNED: May 22, 2023.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE